**INDEX STORE FIXTURE COMPANY,**
Respondent,

v.

**The FARMERS' TRUST COMPANY,**
Appellant.

**No. KCD 27216.**

Missouri Court of Appeals,
Kansas City District.

May 3, 1976.

William C. Paxton, Independence, for appellant.

Royce J. Estes, Kansas City, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

The issue here is which of competing secured claims has priority. The plaintiff filed motion for summary judgment, and the case was submitted to the trial court on a stipulation of facts. Judgment was entered for plaintiff on the issue of liability. Pursuant to an order of the court making that interlocutory order final for purposes of appeal, defendant has taken this appeal.

On August 21, 1968, plaintiff sold certain restaurant equipment to Kenemore for a time sale price of $7,162.34, which it financed under a Retail Time Contract (Purchase Money Mortgage). Kenemore made a downpayment of $2,000, leaving a time balance of $5,162.34, for which he gave his note. Plaintiff assigned the indebtedness to Westport Bank with recourse and thereafter filed a financing statement with the Secretary of State on August 23, 1968, and with the Recorder of Deeds of Jackson County on August 27, 1968.

On March 17, 1969, defendant made an advance to Kenemore under a Security Agreement of that date, for which it took as collateral the same restaurant equipment. Defendant filed its financing statement with the Recorder of Deeds on March 20, 1969, and with the Secretary of State on July 30, 1969.

Thereafter on January 9, 1970, plaintiff sold $4,202.83 additional restaurant equipment to Kenemore. By that time the principal indebtedness on the 1968 transaction between these parties had been reduced to $2,655.50. Kenemore executed a new Retail Time Contract (Purchase Money Mortgage), and a new note in the total sum of $9,063.00, which included the balance due on the old indebtedness. The new 1970 note and Agreement was then assigned to Westport Bank with recourse and plaintiff filed a new financing statement with the Secretary of State on January 12, 1970, and with the Recorder of Deeds on January 13, 1970. Westport Bank posted a final payment on the 1968 note, showing it paid down to zero, and rebated $212.44 unused finance charge.

On April 22, 1971, Westport Bank notified plaintiff of default by Kenemore and invoked the recourse provision of the 1970 note. Plaintiff paid Westport Bank the then existing balance due on the note of $5,665.21, and took a reassignment. A bankruptcy petition by Kenemore quickly followed on April 30, 1971. Defendant took possession of a quantity of the collaterized equipment on June 3, 1971, and plaintiff learned of this at the first meeting of creditors in the bankruptcy proceeding.

Plaintiff then made demand on November 16, 1971, for delivery to it of all the equipment so possessed by defendant. Defendant, however, declined to comply, taking the position that its security interest in the 1968 collateral was superior to that of the plaintiff. This suit followed in which plaintiff prayed for the value of the disput-

ed collateral, interest thereon, attorney fees and costs.

On this appeal defendant takes the position that plaintiff was not entitled to summary judgment because it failed to show its right to recover by unassailable proof, and defendant claims that to the contrary summary judgment should have been entered for it. Its points in support of those conclusions can be summarized as follows: (1) that plaintiff's security interest of August 21, 1968, terminated on January 9, 1970, thereby opening the way for defendant's 1969 security interest to become senior in priority; and (2) plaintiff's 1970 transaction was usurious, and its 1970 security interest is therefore void.

## I.

Defendant does not deny that when it advanced its funds to Kenemore in 1969, its security interest was junior at that time to that of plaintiff. However it contends that the situation changed radically at the time of the January 1970 transaction between plaintiff and Kenemore. Defendant says that transaction resulted in a termination and release of plaintiff's 1968 security interest, because of the following factors: 1) the 1968 transaction was one for a single sale, and in this connection defendant emphasizes that plaintiff's 1968 Retail Time Contract (Purchase Money Mortgage) contained no provision covering future advances; 2) as part of the 1970 transaction Westport Bank applied a portion of the funds made available to Kenemore to pay down to zero the amount owed plaintiff by Kenemore under the 1968 transaction; 3) in connection with the 1970 transaction plaintiff and Kenemore entered into a new security agreement, Kenemore gave a new note, and plaintiff filed a new financing statement; and 4) as part of the 1970 transaction there is a covenant by the mortgagor that the mortgagor lawfully possessed the security listed "free from all encumbrances." While defendant makes no claim

to any of the new equipment sold by plaintiff to Kenemore in 1970, defendant does insist that after the 1970 transaction it did have the first and prior security interest on all of the equipment sold by plaintiff in 1968.

This question of priority between conflicting security interests is controlled by the Uniform Commercial Code, § 400.9–312(5)(a).[1] However, that section interrelates and must be read in connection with other cognate sections of Article 9 in order to be properly understood.

The general pattern for the validity of a security interest under the Uniform Commercial Code requires both "attachment" and "perfection." § 400.9–303. Attachment occurs when a creditor extends value and enters into an agreement for the debtor to give a security interest to the creditor in some property of the debtor. § 400.9–204(1). Perfection is accomplished (with exceptions not here pertinent) upon filing of a financing statement. § 400.9–302. It is immaterial which of these steps occurs first. As stated in § 400.9–402, "[a] financing statement may be filed before a security agreement is made or a security interest otherwise attaches." Similarly the Uniform Commercial Code Comment to § 400.-9–303 states, "[i]f the steps for perfection have been taken in advance (as when the secured party files a financing statement before giving value or before the debtor acquires rights in the collateral), then the interest is perfected automatically when it attaches."

In the instant case, both parties have fully perfected their respective security interest. The issue is therefore sharply presented as to which of these security interests shall prevail over the other. Section 400.9–312(5)(a) has for its purpose to provide this answer. That section states that except in cases governed by other rules (not here pertinent) the priority shall be determined "in the order of filing * * * regardless of which security interest attached first under section 400.9–204(1) and wheth-

---

[1] All statutory references are to RSMo 1969.

er it attached before or after filing." Applying that rule to the facts of this case, the 1968 filing by plaintiff has priority over the 1969 filing by defendant, and this is true even though the note and security agreement due and outstanding to plaintiff from and after January 1970 were dated subsequent to defendant's extension of credit and its filing. Any possible doubt as to this interpretation of § 400.9–312(5)(a) is removed by the following Uniform Commercial Code Comment to that section:

"The operation of subsections (5) and (6) is illustrated by the following examples.

"Example 1. A files against X (debtor) on February 1. B files against X on March 1. B makes a non-purchase money advance against certain collateral on April 1. A makes an advance against the same collateral on May 1. A has priority even though B's advance was made earlier and was perfected when made. It makes no difference whether or not A knew of B's interest when he made his advance.

"The problem stated in the example is peculiar to a notice filing system under which filing may be made before the security interest attaches (see Section 9–402). The Uniform Trust Receipts Act, which first introduced such a filing system, contained no hint of a solution and case law under it has been unpredictable. This Article follows several of the accounts receivable statutes in determining priority by order of filing. The justification for the rule lies in the necessity of protecting the filing system—that is, of allowing the secured party who has first filed to make subsequent advances without each time having, as a condition of protection, to check for filings later than his."

Defendant resists the foregoing conclusion, emphasizing that plaintiff's 1968 security agreement contains no provision to cover future advances, as is specifically authorized by the provisions of § 400.9–204(5). It relies very heavily upon *Coin-O-Matic Service Co. v. Rhode Island Hospital Trust Co.,* 3 UCC Reporting Service 1112 (R.I.Super.Ct.1966) and upon *In Re Hagler,* 10 UCC Reporting Service 1285 (U.S.D.C.Tenn. 1972) which follows *Coin-O-Matic.* The *Coin-O-Matic* opinion refused to allow a prior filing to prevail over a subsequent creditor, where the security interest of the first creditor did not contain a "future advance" clause. The court in that case reasoned that to rule otherwise would be contrary to public policy in that it would make it perilous for any second creditor to ever advance money to a debtor who already had any financing statement on file; that this in effect would result in giving the first creditor an economic monopolistic throttlehold upon the debtor; and that the first creditor must be held not to have such a right unless he specifically provided for it by use of a future advance provision in the security agreement.

Nevertheless, upon restudy of this whole problem, the Uniform Commercial Code Permanent Editorial Board concluded that no change was required in the Code to resolve the conflict which had arisen in future-advance cases, and it rejected the view taken by *Coin-O-Matic* and urged in this case by defendant. Reference is made to that study in *James Talcott, Inc. v. Franklin Nat. Bank of Minneapolis,* 292 Minn. 277, 194 N.W.2d 775, l. c. 784 (1972), and the opinion in that case summarizes the overwhelming majority view on this subject as follows:

"Even where the parties originally contemplate a single debt, secured by a single item of property or a single group of items, the secured party and the debtor may enter into further transactions whereby the debtor obtains additional credit and the secured party is granted more security. The validity of such arrangements as against creditors, trustees in bankruptcy, and other secured parties has been widely recognized by many courts. See, *DuBay v. Williams,* 417 F.2d 1277 (9 Cir. 1969); *Grain Merchants of Indiana, Inc. v. Union Bank & Sav. Co.,* 408 F.2d 209 (7 Cir.), certiorari denied sub nom. *France v. Union Bank & Sav. Co.,* 396 U.S. 827, 90 S.Ct. 75, 24 L.Ed.2d 78

(1969); *Rosenberg v. Rudnick,* 262 F.Supp. 635 (D.Mass.1967).

"Using future-advance clauses and using after-acquired property clauses in the original security agreement are not the only means by which perfected security interests can be obtained in subsequently contracted obligations or in goods the debtor may later come to own. There is nothing exclusive about § 336.9–204(3, 5). Parties may use future-advance and after-acquired clauses, and they are a great convenience. But, if they are not used, there is nothing in the code which prevents the parties from accomplishing the same result by entering into one or more additional security agreements.

"Upon a review of decision law in other jurisdictions it would appear that there is a difference of opinion as to perfection and priority of a later advance where it was not made pursuant to the original security agreement but pursuant to a later agreement which may or may not have satisfied the requirements of the code as to security agreements. The better view holds that, where originally a security agreement is executed, an indebtedness created, and a financing statement describing the collateral filed, followed at a later date by another advance made pursuant to a subsequent security agreement covering the same collateral, the lender has a perfected security interest in the collateral not only for the original debt but also for the later advance. The instant matter involves a parallel situation. See, *In re Rivet,* 299 F.Supp. 374 (E.D.Mich.1969).

In accord: *In re Rivet,* 299 F.Supp. 374 (D.C.Mich.1969); *Mid-Eastern Electronics, Inc. v. First Nat. Bank of So. Md.,* 455 F.2d 141 (4 Cir. 1970); *Household Finance Corporation v. Bank Commissioner of Md.,* 248 Md. 233, 235 A.2d 732 (1967); *Cantrill Construction Co. v. Carter,* 418 F.2d 705 (6 Cir. 1969).

Defendant states and lays much stress in its brief upon the alleged fact that the 1968 Retail Time Contract (Purchase Money Mortgage) and note were returned to Kenemore. The transcript on appeal does not support that statement. Even if it did, such fact would be immaterial. *In re Rivet,* supra, and *Mid-Eastern Electronics, Inc. v. First Nat. Bank of So. Md.,* supra.

Defendant also states as a point in its brief that the trial court erred "by failing to hold plaintiff-respondent seller to its covenant contained on the back of the 'Retail Time Contract (Purchase Money Mortgage)' of January 9, 1970, that plaintiff-respondent was lawfully possessed of all said goods purportedly sold and that the same were free of all encumbrances and that plaintiff-respondent agreed to warrant and defend the same to defendant-appellant against all persons who had lawful claims * * *." The instrument referred to completely fails to give any support to the quoted point. The contract mentioned was one between Kenemore, named as "Buyer & Mortgagor" and plaintiff, named as "seller and mortgagee." The covenant, referred to by defendant in its point on appeal quoted above, appears in compact print on the reverse side of the security agreement and states that "the *mortgagor* herein does hereby covenant to and with the same *mortgagee* that said *mortgagor* is lawfully possessed of the sold goods and chattels, that the same are free from all encumbrances, and agrees to warrant and defend the same to the *mortgagee* against the lawful claims and demands of all persons." (emphasis added). This covenant plainly runs from Kenemore to plaintiff; and not from plaintiff to defendant, as defendant now asserts. Moreover, the security being given by Kenemore to plaintiff was in fact not subject to any superior claim, so that Kenemore was not making any false promise or misrepresentation.

In summary, the Uniform Commercial Code controls and gives priority to plaintiff's security interest, for the reason that plaintiff's financing statement was filed prior in time to that of the defendant.

## II.

Defendant's contention that plaintiff's extension of credit in 1970 was usuri-

ous rests on the following steps: 1) defendant starts by showing that the interest charge in plaintiff's 1970 transaction was in excess of 8%, and defendant says that interest can be justified only by reliance on the Retail Credit Sales Act, § 408.250 et seq.; 2) defendant proceeds to argue that with respect to the balance due on the 1968 transaction, plaintiff in effect lent Kenemore enough money to pay that off to Westport Bank, thereby substituting a straight loan for what had previously been a purchase money obligation; 3) defendant concludes by saying that the Retail Credit Sales Act does not cover straight loans, and that since the interest charge on the 1970 transaction exceeded 8%, the portion pertaining to the 1968 balance is usurious and void.[2]

The fatal weakness in the argument under consideration is that it seeks artificially to change the nature of Kenemore's 1968 obligation as of January 1970. The sale of additional equipment by plaintiff to Kenemore in January, 1970, did not in any realistic way change the character of the balance due from the 1968 transaction. The parties in 1970 simply agreed to refinance the 1968 balance and consolidate it with the additional purchase money obligation then assumed by Kenemore. That refinancing did not extinguish the original 1968 obligation. This result has been reached under the Uniform Commercial Code in parallel factual situations. *In re Rivet*, supra, and *Mid-Eastern Electronics, Inc. v. First Nat. Bank of So. Md.*, supra. The same reasoning was followed by this court prior to adoption of the Uniform Commercial Code. *Bank of Ionia v. Bank of Eldon*, 365 S.W.2d 770 (Mo.App.1963). The rewritten balance of the 1968 transaction, incorporated in the 1970 note, retained its original nature as a "retail time transaction" and remained within the scope of the Retail Credit Sales Act.

Defendant in its argument emphasizes the fact that the 1968 obligation had been assigned to Westport Bank and that the bank held that obligation at the time plaintiff extended new credit to Kenemore in 1970. This attempt to separate the interests of plaintiff and Westport Bank is not persuasive. The 1970 transaction was also assigned to Westport Bank just as soon as consummated between plaintiff and Kenemore. Furthermore, plaintiff made each of those assignments with recourse, thereby continuing to be tied to both transactions. It is not necessary to pursue any inquiry as to whether it would make any difference if those facts were otherwise. Under the circumstances actually present here, the 1968 and 1970 transactions plainly constituted a continuous and integrated course of dealing.

### III.

■ Defendant argues strenuously that summary judgment in this case should not have been entered in favor of plaintiff because plaintiff failed to prove its right to recovery "by unassailable proof." In making this argument defendant has the high hurdle to overcome that the case was submitted for decision upon an agreed stipulation of facts. Seeking to surmount that hurdle, defendant states in its brief: "[n]owhere did Defendant-Appellant stipulate that there were no material facts not contained in the stipulation or that all the facts stipulated were clear and self defining as written. There very definitely could be further evidence that would clarify the meaning of the fact stipulation * * *."

If there was in fact further material evidence bearing upon the issues of this case which was not set forth in the stipulation, then it was the obligation of defendant to bring those further facts to the attention of the court by affidavit or other appropriate means. Failing to do so, it correctly suffered entry of summary judgment against

---

2. No point is raised by plaintiff concerning the standing of defendant to raise this defense of usury, and the question need not be pursued for the purposes of this case. In this connection, see the Annotation "Right of attachment or judgment creditor, or officer standing in his shoes, to attack older lien or security interest for usury." 70 A.L.R.2d 1409, and Missouri cases there collected.

**908**

it. *Kroh Brothers Dev. Co. v. State Line Eighty-Nine, Inc.,* 506 S.W.2d 4, l. c. 12 (Mo.App.1974). Even though there is a difference of opinion between the parties as to the legal effect of the documents stipulated, and even though that difference of interpretation may be honestly debatable, that difference raises simply an issue of law which may be and was properly determined by the summary judgment procedure. *Moore-Harris Abstract Co. v. Estes,* 495 S.W.2d 485 (Mo.App.1973).

### IV.

For its final point, defendant contends that summary judgment should have been entered in its favor. What has already been said fully answers this contention.

Affirmed.

All concur.