THORP FINANCE CORPORATION OF WISCONSIN v KEN HODGINS & SONS

1. SECURED TRANSACTIONS—RENEWAL NOTES—NOVATION—EVIDENCE —CIRCUMSTANTIAL EVIDENCE—DIRECT EVIDENCE.

The acceptance of a renewal note is not regarded as payment of a preexisting note or obligation, in the absence of a novation and express agreement to the contrary; where a novation is alleged, the intent of the parties may be proved circumstantially by the acts or conduct of the parties as well as by direct evidence of an express promise or agreement.

2. SECURED TRANSACTIONS—LATER ADVANCES—PERFECTION OF INTER- EST—FILING.

A lender has a perfected security interest in collateral not only for an original loan against the collateral but also for a later advance where originally a security agreement was executed, an indebtedness created, and a financing statement describing the collateral filed, followed at a subsequent date by the later advance made pursuant to a subsequent security agreement which was not filed covering the same collateral.

3. SECURED TRANSACTIONS—LATER ADVANCES—PERFECTION OF INTER- EST—FUTURE-ADVANCE CLAUSES—AFTER-ACQUIRED PROPERTY CLAUSES—ADDITIONAL AGREEMENTS.

Perfected security interests may be obtained in obligations con- tracted subsequent to an original perfected security agreement by the use of future-advance clauses or after-acquired property clauses in the original agreement or by the parties entering into one or more additional security agreements.

## Appeal from Marquette, Edward A. Quinnell, J.

REFERENCES FOR POINTS IN HEADNOTES

[1] 68 Am Jur 2d, Secured Transactions § 86.

69 Am Jur 2d, Secured Transactions § 269 *et seq.*

[2, 3] 69 Am Jur 2d, Secured Transactions § 352.

[3] 69 Am Jur 2d, Secured Transactions §§ 332, 338, 339 *et seq.*

Construction and effect of UCC Art 9, dealing with secured transac- tions, sales of accounts, contract rights, and chattel paper. 30 ALR3d 9.

Submitted October 13, 1976, at Marquette. (Docket No. 28108.) Decided January 17, 1977.

Complaint by Thorp Finance Corporation of Wisconsin against Ken Hodgins & Sons, a partnership, Ken Hodgins, Sr., Francis Hodgins and others, for claim and delivery of personal property, foreclosure of real property, appointment of a receiver for the property of defendant Ken Hodgins & Sons, and for a preliminary injunctive order restraining defendants from removing, selling or destroying any assets of the partnership of Ken Hodgins & Sons. The injunction was granted, a receiver was appointed and demand was made by the receiver for delivery of personal property belonging to Ken Hodgins & Sons held as collateral by the State Bank of Escanaba. The demand was resisted by State Bank which claimed a first security interest in the property. A show-cause hearing was ordered to establish priority to the collateral. Judgment for defendant State Bank. Plaintiff appeals. Affirmed.

*Charles B. Fey (David J. Lori,* of counsel), for plaintiff.

*Hansley, Neiman, Peterson, Beauchamp & Stupak, P. C.* (by *John M. Bergman),* for defendant State Bank of Escanaba.

Before: M. J. KELLY, P. J., and J. H. GILLIS and W. P. HAMPTON,* JJ.

PER CURIAM. The present case involves a dispute between plaintiff Thorp Finance Corporation and

* Circuit judge (former circuit judge since January 1, 1977), sitting on the Court of Appeals by assignment.

defendant State Bank of Escanaba over their respective priorities as secured creditors of defendant Ken Hodgins & Sons. Plaintiff appeals of right from the trial court's order finding defendant State Bank has priority as to the collateral in question, a model H 65 "C" Hough Payloader. The pertinent facts agreed on by the parties reveal the following:

1. On August 14, 1970, Thorp Finance acquired a security interest in several items of equipment owned by Hodgins, not including the payloader in question.

2. On November 2, 1971, Hodgins purchased the payloader from Bark River Culvert Equipment Company for $38,125. Thereafter, Hodgins executed a note for $24,789.24 and a security agreement covering the payloader, which Bark River subsequently assigned to State Bank on November 8, 1971. On November 10, 1971, State Bank filed a financing statement covering the payloader with the Secretary of State.

3. On February 11, 1972, Hodgins gave Thorp Finance a promissory note and a security agreement in the amount of $96,652.13. Thorp thereafter filed a financing statement which was an amendment of the 1970 financing statement and which made specific reference to the 1970 financing statement by file number. The statement listed the payloader in question and other goods.

4. On March 20, 1974, Hodgins gave Bark River a note which was subsequently assigned to State Bank in the amount of $23,070.31, which included the balance then owing on the payloader. The note of March 20, 1974, contained specific reference to the November 2, 1971, security agreement on the payloader and the original note was marked "renewed". State Bank did not file a new financing statement as to this loan.

5. On July 17, 1975, the court appointed a receiver of all property and effects of Hodgins and the dispute as to the priority of the creditors followed.

The facts outlined above indicate that the State Bank became the first secured creditor by perfection of its security interest in the payloader and that Thorp became the second secured creditor of the payloader. The parties did not dispute this. The issue is, whether a secured party's perfected status continues as to a later advance without a new filing, where a security agreement was executed and a financing statement filed followed by a later advance made pursuant to a subsequent agreement covering the same collateral and purporting to incorporate by reference the original security agreement.

Michigan case law has held that acceptance of a renewal note is not regarded as payment of a preexisting note or obligation, in the absence of a novation or express agreement to the contrary. *Auch v Washtenaw County Sheriff,* 289 Mich 206; 286 NW 214 (1939), *Haggerty v MacGregor,* 9 Mich App 671; 158 NW2d 33 (1968). A renewal note does constitute payment of the original obligation where such was the intent of the parties and such intention may be proved by circumstances such as acts or conduct by the parties, as well as by direct evidence of an express promise or agreement. *Haggerty, supra,* 674. In the present case, the trial court found that the 1974 promissory note did not extinguish the original obligation. The court found that renewal and not cancellation was the intent of both Hodgins and State Bank, for several reasons. The first paragraph of the 1971 security agreement provides in part:

"For the purpose of securing payment of the obliga-

tion hereunder, seller reserves title, and shall have a security interest in said property and in all additions and accessions thereto, until said amount is fully paid in cash. No transfer, *renewal,* extension or assignment of this contract or any interest thereunder, and no loss, damage or destruction of said property shall release buyer from his obligation hereunder * * * " (Emphasis added.)

The trial court found that the original note was marked "renewed", and that the 1974 note made specific reference to the 1971 agreement. These circumstances evidence an intent by the parties to renew, rather than cancel the original obligation.

The trial court further found that the 1971 security agreement did not provide for future advances, but nevertheless concluded that on March 20, 1974, State Bank acquired a perfected security interest at the time State Bank gave value, since the debtor Hodgins had an interest in the collateral and the parties had agreed that a security interest would attach. In ruling that State Bank remained perfected following the 1974 loan, the trial court adopted the reasoning of *In re Rivet,* 299 F Supp 374 (ED Mich, 1969); 6 UCC Rep Serv 460. In *Rivet,* the Court phrased the issue as follows:

"The issue before the court is whether a lender remains secured when it perfects its security interest by filing a financing statement on its original loan, makes four subsequent successive loans wherein the balance due on the previous note is refinanced and additional money is loaned, secures a new note and chattel mortgage, marks each previous note and chattel mortgage 'unpaid balance refinanced and included in new note,' returns the cancelled instruments to the borrower, and does not file a new financing statement for each of the subsequent loans." 299 F Supp at 376.

The Court in *Rivet* first determined that the subsequent loans were not future advances. It found that the security agreement contained no provision for future advances; but that the Code's notice filing system intended, in this situation, to allow the first secured creditor to remain perfected and to have priority over intervening secured creditors who also perfected by filing, UCC § 9-312(5), without the necessity of subsequent filings by the first secured creditor. Since there was attachment of this security interest, UCC § 9-303(1), for each loan, the fact that perfection by filing was done *after* attachment with respect to the first loan, but *before* attachment with respect to the other four loans did not render the later loans unperfected.

The Court in *Rivet* and the trial judge in the present case pointed to example #1 in comment #4 of the Official UCC comment to § 9-312(5). That example provides:

"A files against X (debtor) on February 1. B files against X on March 1. B makes a non-purchase money advance against certain collateral on April 1. A makes an advance against the same collateral on May 1. A has priority even though B's advance was made earlier and was perfected when made. It makes no difference whether or not A knew of B's interest when he made his advance.

\* \* \*

"The justification for the rule lies in the necessity of protecting the filing system—that is, of allowing the secured party who has first filed to make subsequent advances without each time having, as a condition of protection, to check for filings later than his."

Despite the above language relating to "advances", the *Rivet* Court saw no reason why the operation of example #1 should be limited to the future advance situation; the court applied this example

to the facts before it after refusing to label the four subsequent loans "future advances".

We note that the priority dispute in *Rivet* was between a creditor and the trustee in bankruptcy and in the present case the dispute is between two creditors. However, we find, as did the trial court, that the analysis of *Rivet* is equally applicable to the case at bar. There are cases which have reached a contrary result.[1] However, these cases have been rejected by other cases and commentators.[2] For example, in *In re Gilchrist Co,* 403 F Supp 197; 18 UCC Rep Serv 242 (ED Penn, 1975), the decision of the bankruptcy judge relying on the *Rivet* rationale was affirmed, and the bankruptcy judge's opinion quoted from the 1971 Final Report of the Review Committee for Article 9 of the Permanent Editorial Board as follows:

" 'The Committee disapproves this line of cases, [the line of cases contrary to *In Re Rivet,* see footnote 1] and believes that an appropriate financing statement may perfect security interests securing advances made under agreements not contemplated at the time of the filing of the financing statement, even if the filing of the advances then contemplated have been fully paid in the interim. Under the notice-filing procedures of the Code, the filing of a financing statement is effective to perfect security interests as to which the other required elements for perfection exist, whether the security agreement involved is one existing at the date of the filing with an after-acquired property clause or a future

---

[1] *Coin-O-Matic Service Co v Rhode Island Hospital Trust Co,* 3 UCC Rep Serv 1112 (RI Super Ct, 1966), *In re Hagler,* 10 UCC Rep Serv 1285 (ED Tenn, 1972), *Safe Deposit Bank & Trust Co v Berman,* 393 F2d 401; 5 UCC Rep Serv 1 (CA 1, 1968).

[2] *Mid-Eastern Electronics Inc v First National Bank of Southern Maryland,* 455 F2d 141; 7 UCC Rep Serv 1089 (CA 4, 1970), *In re Cantrill Construction Co,* 418 F2d 705; 6 UCC Rep Serv 1217 (CA 6, 1969), *Household Finance Corp v Bank Commissioner of Maryland,* 248 Md 233; 235 A2d 732; 4 UCC Rep Serv 809 (1967). *See also,* White & Summers, *Uniform Commercial Code,* § 25-4, p 908.

advance clause, or whether the applicable security agreement is executed later * * * '". 403 F Supp at 202–203.

The majority view on this subject has been recently summarized as follows:

"Using future-advance clauses and using after-acquired property clauses in the original security agreement are not the only means by which perfected security interests can be obtained in subsequently contracted obligations or in goods the debtor may later come to own. There is nothing exclusive about § 336.9-204(3, 5). Parties may use future-advance and after-acquired clauses, and they are a great convenience. But, if they are not used, there is nothing in the code which prevents the parties from accomplishing the same result by entering into one or more additional security agreements.

"Upon a review of decision law in other jurisdictions it would appear that there is a difference of opinion as to perfection and priority of a later advance where it was not made pursuant to the original security agreement but pursuant to a later agreement which may or may not have satisfied the requirements of the code as to security agreements. The better view holds that, where originally a security agreement is executed, an indebtedness created, and a financing statement describing the collateral filed, followed at a later date by another advance made pursuant to a subsequent security agreement covering the same collateral, the lender has a perfected security interest in the collateral not only for the original debt but also for the later advance. The instant matter involves a parallel situation. See, *In re Rivet,* 299 F Supp 374 (ED Mich, 1969)." *James Talcott, Inc v Franklin National Bank of Minneapolis,* 292 Minn 277, 291–292; 194 NW2d 775, 784 (1972). (Footnote omitted.)[3]

---

[3] The following footnote appeared at the end of this quote:

"6. In 1966, the Permanent Editorial Board for the Uniform Commercial Code appointed a review committee to make an in-depth study of Art. 9. One of the topics to which consideration was given

See also *Index Store Fixture Co v Farmers' Trust Co,* 536 SW2d 902 (Mo App, 1976).

The present case falls within the *Rivet* rationale. State Bank acquired a perfected security interest in the payloader when the original financing statement was filed in 1971. In 1972, Thorp obtained a perfected security interest in the same collateral. As of that time, State Bank had priority because it had filed first. MCLA 440.9312(5); MSA 19.9312(5). In 1974, State Bank advanced an additional sum including the amount owing on the original loan. The requirements of attachment were satisfied, MCLA 440.9204(1); MSA 19.9204(1) and the March 20, 1974 note incorporated by reference the 1971 security agreement into the 1974 loan.[4] As soon as the 1974 security interest attached, it became perfected automatically by the previously filed financing statement of November 10, 1971.

The policy of the Uniform Commercial Code is merely to put potential lenders on notice of possible security interests. A potential creditor of Hodgins, the debtor, would have discovered the 1971 financing statement upon examination of the recordings in the proper place. Once the prior filing was discovered, the creditor could have requested the filing of a termination statement as to the filed financing statement, or entered into a subordina-

---

was the perfection and priority of future advances and whether any change should be made in the code in order to resolve the conflict that had arisen in future-advance cases. The committee concluded that no change was necessary and that the rule of *In re Rivet,* 299 F Supp 374 (ED Mich, 1969), was correct. *See, Preliminary Report No. 2 of the Review Committee on Article 9 of the Uniform Commercial Code,* 25 Bus Law 1067, 1094 (1970)." *James Talcott, Inc v Franklin National Bank of Minneapolis,* 292 Minn 277, 292; 194 NW2d 775 (1972).

[4] The language of the March 20, 1974 note provided in part:

"This note, which is secured by Security Agreement on Hough Payloader, Model H 65 'C' With DT 407 Diesel Engine, dated 11-2-71 * * * ."

tion agreement with the first lender to apportion the priorities in the collateral in question. See *In re Rivet, supra,* 379. By following either procedure an intervening creditor could protect himself against a subsequent advance by the first secured creditor.

The trial court was correct in holding that State Bank's 1971 filing gave it priority over Thorp under the first to file rule of MCLA 440.9312(5)(a); MSA 19.9312(5)(a).

Affirmed.