In re Lloyd Dale SMITH and Vicki Joy Smith, Debtors.

**BOATMEN'S BANK OF PULASKI COUNTY, Plaintiff,**

v.

**Lloyd Dale SMITH and Vicki Joy Smith and Farmers Home Administration, Defendants.**

Bankruptcy No. 82–00824–S.
Adv. No. 82–0822–S.

United States Bankruptcy Court,
W.D. Missouri, S.D.

May 9, 1983.

Bruce B. Warren, Richland, Mo., for plaintiff.

Judith M. Strong, Kansas City, Mo., for Farm & Home Admin.

Van A. Miller, Waynesville, Mo., for defendants/debtors.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

In this adversary proceeding Boatmen's Bank of Pulaski County, hereinafter Bank, filed two pleadings. In one the Bank alleged that it loaned money to debtors based upon financial statements which were materially false. In the other it sought relief from the stay alleging that debtors had converted the collateral. The Bank also sought in this second pleading a determination that the debt was not dischargeable. Both pleadings were filed by the Clerk as a single action.

Thereafter the Bank filed another petition in this same action adding Farmers Home Administration, hereinafter FmHA, as an additional party defendant. In this petition the Bank sought a determination of priorities as between it and FmHA as to certain collateral and for other relief. The Bank also filed Count II to a complaint, precisely which of the three then pending being unknown, again naming debtors and FmHA as defendants, seeking a determination of priorities and asking that the proceeds of the sale of cattle repossessed by FmHA be used to satisfy the Bank's debt.

Debtors answered the first two petitions by general denial. They filed no response to any other pleading. FmHA answered the so-called Count II by asserting the perfection and priority of its security instruments.

A hearing was held. Debtors appeared in person and by counsel. The Bank and FmHA appeared by counsel and representatives. Evidence was introduced and the matter taken under advisement.

The evidence shows that debtor Lloyd Smith was borrowing money from the Bank's predecessor in 1970. In August of 1976 the Bank took a security interest in "All livestock now owned and after acquired". No significant amount of money was advanced to debtors at this time. There is no evidence that debtors had any livestock in August of 1976. In March of 1979 debtors borrowed money from FmHA and executed a security agreement in favor of FmHA identifying cattle and hogs as collateral. Just prior to the advance a financing statement was filed and designated as security, inter alia, "... proceeds and products thereof: (a) ... livestock ...". Debtors deposited the funds in their

account at the Bank and purchased the cattle and hogs called for in the security agreement.

During the period June 1981 through January 1982 debtors borrowed $20,222.59 from the Bank. During the period from April 17, 1981 through January 1982 debtors gave the Bank four financial statements. Debtors gave a statement in September of 1980 but this, the Court finds, is too remote in time to be of probative value except that it also, as do the others, omits any reference to the FmHA debt. On August 24, 1981 the Bank filed a continuation statement of its 1976 UCC filing.

According to an affidavit filed by FmHA, an agent searched the UCC filings in Pulaski County on September 1, 1981 and found no continuation filing by the Bank. In late September 1981, debtors executed a security agreement in favor of FmHA identifying cattle and hogs as collateral. No financing statement was filed in connection with this security agreement. In March of 1982 FmHA foreclosed its security interest in the cattle and sold them, applying the proceeds against the loan. Debtors filed for relief under Chapter 7 of the Code on March 18, 1982, after the foreclosure. This adversary was filed shortly thereafter.

Section 400.9–312, R.S.Mo.1969, deals with "[p]riorities among conflicting security interests in the same collateral". The section provides, in part, that . . .

"(3) A purchase money security interest in inventory collateral has priority over a conflicting security interest in the same collateral if

(a) the purchase money security interest is perfected at the time the debtor receives possession of the collateral; and

(b) any secured party whose security interest is known to the holder of the purchase money security interest or who, prior . . . had filed a financing statement covering the same . . . type of inventory, has received notification of the purchase money security interest . . .

(4) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter".

Section 400.9–109(3) R.S.Mo.1969 classifies goods as " '[f]arm products' if they are . . . livestock . . . used . . . in farming operations . . . If goods are farm products they are neither equipment nor inventory." The statutory comment notes that

"4. Goods are 'farm products' only if they are in the possession of a debtor engaged in farming operations. Animals in a herd of livestock are covered whether they are acquired by purchase or result from natural increase."

The evidence shows that FmHA filed its financing statement prior to the funds being paid to debtor. Debtor used a substantial part of the money to purchase pigs and cattle. The purchases were made within two months of the advance. The purchase money security interest therefore was perfected when debtors received the collateral.

 Debtors were engaged in farming at all times herein set out and Section 400.9–109(3) excludes, therefore, these animals from the definition of inventory. The question of priority of creditors consequently is determined by reference to Section 400.9–312(4). That section does not require notice to a creditor holding a prior filing in the same product with an after acquired clause and allows the creditor making a purchase money advance to have priority over the creditor holding "after acquired" rights. Thus, in May of 1979, FmHA had a priority in the purchased cattle over the claim of Bank.

In its brief the Bank concedes that FmHA had a purchase money security interest in the collateral until September 27, 1981. The Bank argues that the security agreement dated September 28, 1981, destroyed that status and gave FmHA a security interest for an antecedent debt, thus restoring the Bank to its first filed priority status. There is no evidence that FmHA released its first security agreement or UCC filing or advanced new funds in return

for execution of this September, 1981 security agreement. No financing statement was filed in connection with the 1981 security agreement.

There was no testimony explaining the 1981 agreement. It would appear that it was taken after the FmHA agent ran a lien search and discovered, or so it seemed, that the Bank lien had expired. The 1981 agreement may have been taken to identify the then existing security.

There are a number of reasons why execution of the 1981 security agreement is immaterial. The Bank had filed a continuation statement and the Court so finds. The Bank is not charged with FmHA's failure to discover such a filing or the apparent failure of the Recorder to index or file. The Bank continued to occupy a secured position in some respects. Nonetheless, as to the purchased cattle, FmHA's purchase money position was a priority without regard to the prior Bank filing and needed no subsequent action to maintain that priority even if the Bank's filing had lapsed.

The Court concludes that execution of the 1981 security agreement, without more, is of no significance. The 1979 agreement was perfected and not altered by the subsequent agreement. Section 400.9–108 does not apply. In this instance the secured party made no advance, incurred no obligation, released no specific security interest and gave no value when the 1981 agreement was executed. Compare *Matter of Peska Assoc. Inc.,* 5 BCD 278 (BC SD NY 1979).

The Bank also contends that the FmHA security agreement loses its purchase money character and priority as to cattle produced from those purchased. Calves which are bred are not purchased. They are "after acquired" in a general sense. The FmHA security agreement also covers all increased. The question then is whether cattle bred from security for a purchase money security interest are themselves purchase money security.

Section 400.9–107, R.S.Mo.1969, defines a purchase money security interest as one "taken by a person who by making advances ... gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." Here there is no question that debtors used the FmHA advance to purchase cattle which they used for their benefit. The advance ultimately, through a natural process, also enabled debtors to have the use of calves, i.e., the products of the purchase money collateral.

The Uniform Commercial Code enables a security interest to follow collateral even if it is transformed. See Section 400.9–314, R.S.Mo.1969, as to rules concerning accessions and Section 400.9–315, R.S.Mo.1969, as to rules concerning commingled or processed goods. But these statutes, while preserving a security interest, do not resolve the issue as to whether the interest retains its purchase money character but there is clear suggestions that the character remains unchanged. See, for example, Section 400.9–315(1)(b) which provides that a financing statement covering goods "also covers the product into which the goods have been manufactured, processed or assembled." See also *Holzman v. L.H.J. Enterprises, Inc.,* 476 F.2d 949 (9th Cir.1973) where the Court held that inventory purchased from the sale of inventory subject to a purchase money security interest retained the character of purchase money security.

The purchase money security interest as an exception to the rules of priority of filing allows the creditor to have a security interest in identified collateral which it enabled the debtor to obtain. While such collateral may be transformed, as through manufacturing, it does not expand through its own effort. Cattle do (ignoring the biological act). The purchase money security interest is maintained by keeping the collateral intact or tracing the proceeds. Cattle as collateral expand by natural process.

In a case styled *In re Ingram,* 11 UCC Reporting Service 605 (5th Cir.1972) the Court held a security interest in progeny of leased cattle was not a purchase money security interest because the creditor only enabled the debtor to acquire "rights in and

use of the breeder stock" and not the progeny. The suggestion in Section 400.9–204, R.S.Mo.1969 is that since the debtor had no rights in unconceived progeny at the time the security agreement was executed, no security interest could attach and therefore the creditor acquired no rights in such unconceived animals.

The purchase money security interest priority is an exception to the general rule and should be construed narrowly even though the application to a cattle situation is inexact. Compare *Index Store Fixture Co. v. Farmer's Trust Co.*, 536 S.W.2d 902 (Mo. App.1976). It must be remembered, in support of a narrow reading, that even the natural process of herd growth does not proceed without assistance not provided by the purchase money creditor. The result could be different if the evidence showed that some part of the purchase money collateral was sold and new animals purchased, but that is not the case here. Similarly this could be a variation if the calves only replaced cattle that had died. Again, while the herd has diminished here, there is no evidence that diminution occurred from the aging process.

The Court concludes, therefore, that the purchase money security interest does not apply to the calves. FmHA is entitled to the proceeds of the sale of those cattle which retained purchase money character at the time of foreclosure but the Bank is entitled to the proceeds from the sale of any others.

The evidence shows that debtors purchased 19 cows and 20 pigs with the FmHA loan. FmHA sold 13 cows and 7 calves. Debtors owned no pigs at the time of the foreclosure. There is no evidence as to disposition of the other cows. The sale price was not allocated among the animals, although it appears that all of the cows could have been part of the purchase money herd. The parties are directed to confer and to advise the Court whether a further hearing would be necessary to resolve the issue of allocation.

The Court also reserves the question of the nondischargeability of the debt to the Bank until the issue of allocation is resolved. Further evidence may be necessary on that question.

SO ORDERED this 9th day of May, 1983.