**STATE BANK OF SLEEPY
EYE, Appellant,**

v.

**Michael A. KRUEGER, et al.,
Defendants,**

**Norwest Bank of Redwood
Falls, Respondent.**

No. C7–86–2065.

Court of Appeals of Minnesota.

May 12, 1987.

Donald E. Schmid, Jr., Hauser & Schmid, Sleepy Eye, for appellant.

Patrick A. Oman, Foreman & Ebbesen, Redwood Falls, for respondent.

Heard, considered, and decided by LESLIE, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

LESLIE, Judge.

Appellant, State Bank of Sleepy Eye, now called Americana Bank of Sleepy Eye, initiated an action for repossession of a combine and related equipment owned by Michael A. Krueger, a debtor with the bank. Respondent Norwest Bank of Redwood Falls, Klossner Agricultural Credit Corporation, and Klossner State Bank were named defendants because of filed financing statements identifying them as secured parties in the combine.

Debtor Krueger filed for Chapter 11 bankruptcy and an automatic stay was imposed on appellant's action. A bankruptcy court order subsequently lifted the stay and the combine was voluntarily returned to appellant and respondent banks upon completion of the 1985 harvest. Krueger paid $6,000 into an escrow account for his use of the combine pending resolution of the security interest dispute between the two primary lender banks.

Appellant and respondent both moved for summary judgment and appeared at trial on March 10, 1986, stipulating to the facts as stated in appellant's March 3, 1986 legal brief. Klossner did not appear and had in fact previously subordinated its security interest in the disputed combine to appellant's.

Appellant State Bank of Sleepy Eye conceded that respondent Norwest Bank of Redwood Falls had a first priority security interest in the combine to the extent of $14,000. Yet, appellant claimed it had a second priority security interest to the extent of $18,500, while respondent claimed it had a second priority security interest in the combine to the extent of $34,062. The trial court found Norwest Bank of Redwood Falls' security interests to be prior in right to that of State Bank of Sleepy Eye and granted summary judgment. State Bank of Sleepy Eye Appeals. We affirm.

## FACTS

On February 17, 1978 Michael A. Krueger entered into a security agreement with respondent Norwest Bank of Redwood Falls. In return for production financing, Krueger gave Norwest a security interest in "[a]ll equipment of Debtor, whether now owned or hereafter acquired, including but not limited to * * * [a]ll farm equipment, including but not limited to machinery, tools and motor vehicles, whether now owned or hereafter acquired." While the collateral was to secure "each and every debt liability and obligation of every type and description which Debtor * * * at any time hereafter owe[s] to Secured Party," the security agreement did not obligate Norwest to make any future advance. Norwest then advanced operating funds to Krueger. On February 21, 1978 Norwest filed a financing statement on this transaction covering among other things "[a]ll farm equipment, including but not limited to machinery, tools, and motor vehicles."

On October 2, 1979 Krueger borrowed $79,871 from respondent Norwest to purchase a combine. Norwest obtained a purchase money security interest in the combine at that time which was perfected by the previously filed February 21, 1978 financing statement.

Beginning in March of 1982 Klossner Agriculture Credit Corporation and Klossner State Bank made several operating loans to Krueger. Klossner filed a financing statement that month detailing its relationship with Krueger and naming various farm equipment as collateral for the operating loans. At the time of this filing all of Krueger's outstanding debt with Norwest had been paid off except the balance due for the purchase money obligation on the combine Krueger had purchased in October

of 1979. Six months later, on September 13, 1982, Norwest filed a continuation of its February 1978 financing statement concerning Krueger.

On June 10, 1983 appellant State Bank of Sleepy Eye made a loan advance to Krueger for $35,200. Before the loan itself was actually made appellant obtained a subordination agreement from Klossner by which Klossner's security interest was made junior to the security interest appellant acquired in Krueger's possessions. Appellant State Bank of Sleepy Eye also checked with its competitor Norwest Bank of Redwood Falls. Appellant verified that the remaining balance Krueger owed on the purchase money obligation in the combine was then approximately $14,500. Appellant did not obtain a subordination agreement with Norwest nor did appellant purchase Norwest's security interest in the combine.

The signed security agreement between Krueger and appellant State Bank of Sleepy Eye gave appellant a security interest in Krueger's combine. On June 15, 1983 $24,923 of the proceeds of appellant's loan to Krueger was advanced to Norwest as partial payment of Krueger's obligation with them. On July 20, 1983 a financing statement running between Krueger and appellant bank was filed. Thus, appellant's security interest became perfected on that date. At the completion of this transaction, Krueger owed appellant State Bank of Sleepy Eye $35,200, respondent Norwest Bank of Redwood Falls $14,250, and Klossner $124,000, plus interest according to the various loan documents.

On April 13, 1984 Krueger approached respondent Norwest for further financing for 1984 crop operations and received a line of credit up to $140,000 for that purpose on a new note. A new security agreement was entered into granting Norwest a security interest in, among other things, all of Krueger's equipment. The security agreement also indicated this same collateral was "[a]lso covered by UCC financing Stmt. # 31917 filed in Brown County, dated 2-21-78." Three days later a further financing statement concerning this transaction was filed.

In the Spring of 1985 Krueger filed for Chapter 11 bankruptcy. Pursuant to an agreement among appellant, respondent and Krueger the bankruptcy court entered an order allowing Krueger to use the combine for the 1985 harvest. The combine was then delivered to the banks, jointly, for liquidation disposition subject to the rights of the two banks. Krueger deposited $6,000 in escrow for use of the combine. The rent and sales proceeds derived from the use and sale of the combine were eventually deposited in a special escrow account which had a balance of $33,419.87 as of October 3, 1986.

The parties stipulated to the facts and proceeded to trial, both moving for summary judgment. Appellant State Bank of Sleepy Eye argued there was a break in the perfected status of respondent Norwest Bank of Redwood Falls' security interest between respondent's first and second loans to Krueger, as no value had been given pursuant to Minn.Stat. § 336.9–203(1). Appellant claimed that since respondent was not obligated to make any future loans to Krueger after the first set of loans no value had been given during the period between loans and thus a break in perfection had taken place. Since there was a break in perfection, appellant further argued that under Minn.Stat. §§ 336.9–312(5) and 336.9–312(7) the priority of the second Norwest loan should not be determined from the date of filing of the financing statement for the original loans, but from the date the second loan was actually made. Consequently, appellant claimed respondent had first priority on the amount that remained on the original purchase money security interest in the combine, $14,000, appellant had second priority on the security interest appellant acquired from Krueger after this purchase, $18,500, and respondent had third priority on the second operating loan security interest, $34,062.

Respondent Norwest Bank of Redwood Falls claimed that under the plain language of Minn.Stat. §§ 336.9–312(5) and 336.9–

312(7) the priority of the first and any subsequent loans made that were secured by the collateral included in Norwest's originally filed financing statement was to be determined based on the date of the filing of that original financing statement. Respondent argued that since Norwest's financing statement listing Krueger's combine as collateral was filed prior to appellant's financing statement, both of respondent's security interests in that combine were superior to appellant's. Respondent further argued that the absence of a commitment to make further loans was irrelevant to this determination. The trial court found for respondent and granted summary judgment against appellant.

## ISSUE

Did the trial court properly find respondent's perfected security interests senior to appellant's perfected security interest?

## ANALYSIS

On appeal from summary judgment, the function of the appellate court is to determine whether there are genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). Since the parties stipulated to the facts at trial this case involves the latter inquiry.

This case presents a question of first impression in Minnesota. At issue is the interpretation of Minn.Stat. §§ 336.9–312(5) and Minn.Stat. § 336.9–312(7) (1986) as they relate to the priorities of two secured creditors where the first creditor acquires a security interest in the debtor's collateral not contemplating any future loan or further security interest, a second creditor then acquires a security interest in the same collateral, after which the original creditor acquires an additional security interest in that same collateral. Does the first creditor's subsequent security interest have priority based on the date of the filing of the financing statement for the initial security interest or is the priority of the subsequent security interest determined based on the date of the subsequent loan?

There is a split in other jurisdictions as to how sections 9–312(5) and 9–312(7) of the Uniform Commercial Code should be interpreted in this situation. Minn.Stat. § 336.-9–312(5) provides:

(5) In all cases not governed by other rules stated in this section * * * priority between conflicting security interests in the same collateral shall be determined according to the following rules:

(a) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection.

Minn.Stat. § 336.9–312(7) provides:

(7) If future advances are made while a security interest is perfected by filing * * * the security interest has the same priority for the purposes of subsection (5) with respect to the future advances as it does with respect to the first advance. If a commitment is made before or while the security interest is so perfected, the security interest has the same priority with respect to advances made pursuant thereto. In other cases a perfected security interest has priority from the date the advance is made.

The issue was first addressed in *Coin–O–Matic Service Co. v. Rhode Island Hospital Trust Co.,* 3 U.C.C.Rep.Serv. (Callaghan) 1112 (R.I.Super.Ct.1966). W. Hawkland, R. Lord & C. Lewis, *U.C.C. Series* § 9–204:05 (Art. 9) (1986); J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 1038–40 (2d ed. 1980); *see Western State Bank v. Grumman Credit Corp.,* 564 F.Supp. 9, 16–17 (D.Mont.1982). The court in *Coin–O–Matic* held that a second loan did not take its priority from the time the original financing statement was filed where the original security agreement did not provide for future advances. *Coin–O–Matic,* 3 U.C.C.Rep.Serv. (Callaghan) at 1120. One commentator cites the *Coin–O–Matic* rule as the proper interpretation of section 9–

312(7): "When no provision is made for future advances, there is no merger of security agreements executed between the same parties, with the result that the priority of each agreement is to be determined independently of the others." R. Anderson, *Anderson on the Uniform Commercial Code* 275–76 (3rd ed. 1985). "The effect of [§ 9–312(7)] is to make priority relate back to the original transaction in the case of obligatory advances but to the date of making in the case of optional advances." *Id.* at 276 n. 1.

Appellant State Bank of Sleepy Eye urges this court to apply the *Coin–O–Matic*/Anderson interpretation of section 9–312(7). Under that rule appellant would prevail. Neither Norwest's February 17, 1978 security agreement, nor any subsequent security agreement entered into before appellant filed on their security interest, included a commitment by Norwest to make future advances to Krueger. Consequently, under *Coin–O–Matic* the priority of Norwest's subsequent security interest would have to be determined based on the day they were made. Perfection would be instantaneous at the time the loan took place based on the prior financing statement. *James Talcott, Inc. v. Franklin National Bank of Minneapolis*, 292 Minn. 277, 290, 194 N.W.2d 775, 783 (1972). Under the *Coin–O–Matic* rule the priority of the security interest would be determined from the date the loan was made and not the date of that original financing statement. Since respondent's second advance was made after appellant perfected by filing, appellant would prevail. Yet, this is the minority interpretation of section 9–312(7).

The majority interpretation is that section 9–312(7), which was added to the code in 1972, "was designed to clarify the intent of the drafters under the old Code, that priorities with respect to future advances were to be measured by priorities accorded the initial advance." W. Hawkland, R. Lord & C. Lewis, at 9–204:05. The section makes "clear that even if the secured party has not included a future-advance provision in the security agreement, a future advance actually made is entitled to the same

priority as the initial advance." *Id.* Under section 9–312(5) this would be at the time the original financing statement was filed. White and Summers are in accord with this interpretation. J. White & R. Summers at 1038–39.

White and Summers specifically reject the *Coin–O–Matic* line of cases. *Id.* at 1039–40. While the Rhode Island court in *Coin–O–Matic* appeared to fear that a creditor under the majority interpretation could unduly restrict a debtor's power to borrow, White and Summers indicate disagreement:

> For three reasons, we think a result opposite to the one in *Coin–O–Matic* can and should be reached even in states which have not adopted the '72 amendments. First, the *Coin–O–Matic* holding provides little protection against overreaching, for a creditor can avoid the holding simply by including a future advance clause in his security agreement. Second, we suspect that the *Coin–O–Matic* court misunderstands commercial practice. We suspect that it is a rare banker who will lend against the same collateral which secures a prior loan; in our experience the commercial practice is for the second lender to pay off the first and so take a first priority as to all of the collateral. Finally, *Coin–O–Matic* conflicts with the most obvious and we think intended meaning of 9–312(5)(a); if the drafters had wished to qualify the rule as the *Coin–O–Matic* court did, they could have done so.

*Id.* (footnotes omitted).

The majority rule is the better interpretation of the statute. This interpretation is based on the plain language of the statute. The statute provides that "[i]f future advances are made while a security interest is perfected by filing * * * the security interest has the same priority * * * with respect to the future advances as it does with respect to the first advance." Minn.Stat. § 336.9–312(7) (1986). Further support for this interpretation is garnered from the fact that the majority of jurisdictions and commentators endorse this approach. *See e.g.*, J. White & R. Summers, at 1039–40;

W. Hawkland, R. Lord & C. Lewis, at § 9–204:05; *In re Merriman,* 4 U.C.C.Rep. Serv. (Callaghan) 234 (Bankr.S.D.Ohio 1967); *Household Finance Corp. v. Bank Commissioner of Maryland,* 248 Md. 233, 235 A.2d 732 (1967); *Thorp Finance Corp. of Wisconsin v. Ken Hodgins & Sons,* 73 Mich.App. 428, 251 N.W.2d 614 (1977); *In re Rivet,* 299 F.Supp. 374 (Bankr.E.D.Mich. 1969); *Provident Finance Co. v. Beneficial Finance Co.,* 36 N.C.App. 401, 245 S.E.2d 510 (1978).

Appellant argues that the minority rule should be applied here. Appellant claims there has been a break in the perfected status of respondent because no value was given in between respondent's advances to Krueger, as required by Minn.Stat. § 336.-9–302(1), because respondent was under no obligation to lend Krueger any more money. Such a break in perfection takes respondent out of the scope of the relation back language of sections 336.9–312(5) and 336.9–312(7). One commentator recognized the potential problem and indicated that the majority rule should still apply in such a case. "[I]t is clear that the Code contemplates that even in this situation, a future advance that is subsequently made will have priority over competing claims to the same collateral. Subsection 9–312(5) adopts a priority rule dating from the time of filing or perfection; thus * * * the secured party should have priority as soon as he makes his future advance." W. Hawkland, R. Lord & C. Lewis, at § 9–204:05 (footnotes omitted).

Applying the majority rule to the case at hand we find that respondent Norwest had first priority over appellant for all of its secured interests. Respondent filed to create a perfected security interest in the disputed combine prior to appellant State Bank of Sleepy Eye. Appellant was placed on notice: "Once a financing statement is on file describing property by type, the entire world is warned, not only that the secured party may already have a security interest in the property of that type * * * but that it may later acquire a perfected security interest in property of the same type acquired by the debtor in the future." *Talcott,* 292 Minn. at 290, 194 N.W.2d at

783. Appellant proceeded to loan money to Krueger at its own risk. Appellant could have acted to protect itself by obtaining a subrogation agreement or by paying off the loan so as to become the sole secured creditor.

## DECISION

The trial court correctly found respondent's perfected security interests in the disputed collateral to be superior to appellants.

Affirmed.