## HOUSEHOLD FINANCE CORPORATION *v.* BANK COMMISSIONER OF MARYLAND, ᴇᴛ ᴀʟ.

[No. 700, September Term, 1966.]

234

*Decided December 7, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-
NEY, MARBURY, BARNES and SINGLEY, JJ.

*William L. Putzel,* with whom were *Lloyd R. Mowery* and
*Putzel & Putzel* on the brief, for appellant.

Amicus curiae brief filed by Maryland Consumer Finance
Association. *William J. Pittler* and *Sullivan & Pittler* on the
brief.

*Edward L. Blanton, Jr., Assistant Attorney General,* with
whom was *Francis B. Burch, Attorney General* on the brief,
for appellees.

HORNEY, J., delivered the opinion of the Court.

This appeal presents a question of first impression as to whether the "financing statement" required by § 9-402 of Article 95B (Uniform Commercial Code—U.C.C.) is a "recorded lien or evidence of obligation" within the meaning of § 197(5) of that part of Article 11 (Banks and Trust Companies) relating to the Industrial Finance Law (I.F.L.).

The appellant, Household Finance Corporation of Baltimore (finance company), is qualified to do business in the State of Maryland under the provisions of the I.F.L. and is duly licensed as an industrial finance company. The appellees, the Bank Commissioner of Maryland, his Deputy and the Attorney General of Maryland, are charged under the law with the duty of regulating industrial finance companies.

In the normal pursuit of its business, the finance company makes loans to borrowers in amounts ranging from $300 to $1500. As security therefor certain types or items of property are required as collateral and as evidence thereof a security agreement is entered into. To perfect the security agreement, a financing statement is filed in the chattel records of Baltimore City or the county wherein the debtor resides. During the period a balance remains unpaid on an original loan, borrowers frequently request additional advances. When the finance company lends the debtor more money ("refinancing" or "flipping" as it is commonly called), the loan company cancels the original loan and makes a new loan for the total amount due including the unpaid balance due on the old loan. At that time the old loan contract and security agreement are marked "unpaid balance refinanced and included in new security agreement" and a new loan contract and security agreement is executed by the debtor. But the finance company, instead of requiring the debtor to sign a new financing statement, permits the original statement to continue on record as long as the security for the refinanced loan is the same security as for the original loan. Theretofore it had been the practice of the finance company to secure its loans by means of chattel mortgages and, on the refinancing of a loan, the company released the recorded chattel mortgage as required by § 197(5) of the I.F.L. and recorded a new one. Since the adoption of the U.C.C. the finance company has used the procedure outlined above.

This procedure, however, was challenged by the appellees and the bank commissioner required the finance company, upon the refinancing of a security transaction, to terminate the financing statement on record and simultaneously file a new one to accompany the refinancing. In so doing, the commissioner relied on § 197(5) of the I.F.L. providing that—

> "Upon repayment of a loan contract in full, [the licensee shall] mark plainly every obligation signed by any obligor with the word 'Paid' or 'Cancelled,' restore any pledge, cancel and return any note and any assignment or security given to the licensee and release any mortgage or any other recorded lien or [1] evidence of obligation."

In interpreting the statute, the commissioner adopted the opinion of the Attorney General, 49 O.A.G. 38, which concluded that—

> "although a recorded financing statement need not necessarily evidence a subsisting security interest * * * it is nevertheless, at the time of repayment, a recorded evidence of obligation which, as such, the industrial finance lender must release of record by filing a termination statement."

The finance company filed a bill in equity for a declaratory judgment to determine the correctness of the opinion of the Attorney General. Although the chancellor at first was of the opinion that the purpose of the financing statement was intended to do no more than give notice of the existence of a loan, he ruled that the statement must technically be regarded as an evidence of debt and in the end filed an order to that effect. We do not agree.

Prior to the enactment of the U.C.C., a security interest in chattels was obtained by filing one of the then recognized instruments of security used to denote the existence of a lien. The U.C.C. however introduced a new system of notice filing. As explained in the second official comment to § 9-402—

---

**1.** The statute actually reads *of* instead of *or* but the context makes it clear that *of* was a misprint.

"This section adopts the system of 'notice filing' which has proved successful under the Uniform Trust Receipts Act. *What is required to be filed is not, as under chattel mortgage and conditional sales acts, the security agreement itself, but only a simple notice which may be filed before the security interest attaches or thereafter.* The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs." [Italicizing added.]

See Hawkland, *A Transactional Guide To The U.C.C.,* Vol. 2, § 2.2802.

A financing statement need not state the amount or any other terms of the debt and ordinarily contains only the addresses of the debtor and the secured party from whom information can be obtained, a statement indicating the type of collateral and the signature of the parties. See Article 95B, § 9-402.

Under the prior law where the instrument of security itself was recorded, a potential lender would glean the details of prior security transactions from the public records: hence the requirement of the I.F.L. that paid or cancelled instruments of security be released. But under the U.C.C., where a general notice indicating that the secured party *may* have a security interest in the stated collateral is all that is required to be filed publicly, there is no need to release the public notice in the event of a paid or cancelled security interest because, instead of examining the records, the information as to whether such interest still exists may be obtained from the secured party.

The U.C.C. also inaugurated a new system of priority. Section 9-312(5) provides:

"In all cases not governed by other rules stated in this section (including cases of purchase money security interests * * * [which are not applicable here]), priority between conflicting security interests in the same collateral shall be determined as follows:

(a) In the order of filing if both are perfected by filing, regardless of which security interest attached

first under § 9-204(1) and whether it attached before or after filing."

Thus, a party coming within the § 9-312(5) priority rule who is the "first-to-file" has precedence over conflicting security interests in the same collateral. Example 1 in Comment 4 states:

"A files against X (debtor) on February 1. B files against X on March 1. B makes a non-purchase money advance against certain collateral on April 1. A makes an advance against the same collateral on May 1. A has priority even though B's advance was made earlier and was perfected when made. It makes no difference whether or not A knew of B's interest when he made his advance.

"The problem stated in the example is peculiar to a notice filing system under which filing may be made before the security interest attaches (see Section 9-402). * * * The justification for the rule lies in the necessity of protecting the filing system—that is, of allowing the secured party who has first filed to make subsequent advances without each time having, as a condition of protection, to check for filings later than his."

A subsequent lender may protect himself by requiring the debtor, as a condition to making the loan, to utilize § 9-208 requiring a secured party to disclose to the debtor when requested the particulars of its financing arrangements with him. See *Plemens v. Didde-Glaser,* 244 Md. 556, 563, 224 A. 2d 464, 468 (1966).

Priority, however, is not always determined by the order of filing. This is true only where the competing security interests were all perfected by filing. An advance may lose priority to another secured party who obtains a purchase money security interest — subsections 9-312(3) and (4)—or whose security interest was perfected by means other than filing. § 9-312(5)-(b). See 2 Gilmore, *Security Interests in Personal Property* (1965 Ed.), § 35.7, for a good discussion of priorities. In § 35.8 of the work cited it is said:

"A prospective lender who finds a financing statement on file against his prospective debtor will in all probability end up with a junior interest against the first filer's subsequent advances as to collateral of a type covered by the financing statement, unless the second lender's interest will qualify for a purchase-money priority. * * * [A] non-purchase-money lender who comes in after an earlier filing and who is not willing to take the risk of subordination to subsequent advances can do one of two things: get a subordination agreement from the first filer or pay him off. Otherwise, the first filer's subsequent advances will ride over the intervening interest."

While the provisions of § 9-203(2) of the U.C.C. state that—

"A transaction, although subject to this subtitle, may also be subject to other statutes regulating loans and retail installment sales such as * * * [the I.F.L.] * * * and in the case of conflict between the provisions of this subtitle and any such statutes, the provisions of such statute control,"

there is no conflict between the provisions of § 197(5) of the I.F.L. and the provisions of the U.C.C. for the simple reason that a financing statement is not a "recorded lien or evidence of obligation" within the meaning of that section which, according to the commissioner, must be released upon the refinancing of a security transaction. In the first place, the financing statement (in that it contains none of the characteristics of a formal lien such as the amount loaned, the maturity date and the time when installment payments are due) does not purport to be anything more than a method of giving notice of the probability that the secured party has a security interest in the stated collateral. Secondly, the secured party is not required to release a financing statement unless the debtor demands certification of its discharge. In addition, the U.C.C. provides its own method of keeping the recording dockets in a reasonably uncluttered condition as well as for the termination of security obligations which have been paid in full. One, § 9-403(2), pro-

vides that a financing statement is effective for a period of five years in the absence of an expressed shorter maturity date or longer if a continuation statement is filed. The other, § 9-404(1), provides that upon the discharge of an obligation "the secured party must on written demand by the debtor send the debtor a statement that he no longer claims a security interest under the financing statement."

Requiring the release of a financing statement upon the refinancing of a loan would serve no useful purpose and, what is more to the point, would disrupt the priorities designed to protect the filing system. See § 9-312, Comment 4, Example 1. We hold that there is no conflict between the provisions of § 197-(5) of the I.F.L. and the provisions of the U.C.C.

*Order reversed; appellees to pay the costs.*