In re John Thomas COLEMAN and Shirley Mae Coleman, Debtors.

John Thomas COLEMAN et ux., Plaintiffs,

v.

AMERICAN FINANCE CORP. et al., Defendants.

In re Priscilla A. DIXON, Debtor.

Priscilla A. DIXON, Plaintiff,

v.

AVCO FINANCIAL SERVICES OF GLEN BURNIE, INC., et al., Defendants.

In re William F. HUEBLER and Theresa L. Huebler, Debtors.

BENEFICIAL FINANCE CO. OF MARYLAND, Plaintiff,

v.

William F. HUEBLER et ux., Defendants.

Bankruptcy Nos. 80–2–0026–L, 80–2–599–L and 80–2–0808–L.
Adv. Nos. 80–0252, 80–0526 and 80–0598.

United States Bankruptcy Court, D. Maryland.

April 29, 1981.

David M. Thomas, Baltimore, Md., for John and Shirley Coleman.

Emory E. Tamplin, Jr., Cambridge, Md., for American Finance Co.

Robert C. Brown, Ellicott City, Md., for Priscilla A. Dixon.

Howard M. Heneson, trustee.

Josef E. Rosenblatt, Baltimore, Md., for William and Theresa Huebler.

Murray I. Resnick and John Carroll Broderick, Baltimore, Md., Donald E. Manger, Catonville, Md., for Beneficial Finance Co.

## MEMORANDUM OPINION

HARVEY M. LEBOWITZ, Bankruptcy Judge.

These cases, consolidated for the purposes of this opinion, call upon this Court to consider for the first time the constitutionality of the avoidance provisions of § 522(f) of the Bankruptcy Code[1] with respect to avoidance under § 522(f)(2) of security interests created prior to the effective date of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2683 (1978). Thus, the Court is now summoned to rule on an issue analogous to that expressly reserved in *In re Butler*, 5 B.R. 360, 361, 6 B.C.D. 768, 769 (Bkrtcy., D.Md.1980).[2] In this instance, however, the legal issues have been properly raised, briefed, and fully argued by counsel in open court.

■ The issue here is one requiring the resolution of conflicting Constitutional mandates. On the one hand, the Constitution provides that, "The Congress shall have Power ... to establish ... uniform Laws on the subject of Bankruptcies throughout the United States." U.S.Const. Art. I, § 8. But on the other, it sets out the limitation that, "No person shall ... be deprived of life, liberty, or property, without due process of law." U.S.Const. Amend. V. Whether Congressional adoption of § 522(f) may have in some instances extended the Bankruptcy Clause beyond the limits imposed by the Fifth Amendment, is an inquiry not lightly to be undertaken. In reaching a

---

**1.** Section 522(f) provides as follows:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
   (1) a judicial lien; or
   (2) a nonpossessory, nonpurchase-money security interest in any—
   (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

   (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
   (C) professionally prescribed health aids for the debtor or a dependent of the debtor.
11 U.S.C. § 522(f) (Supp. III 1979).

**2.** In *Butler*, however, the Court was called upon to consider avoidance of judicial liens under § 522(f)(1). Because judicial liens present somewhat different considerations from security interests, a separate opinion will be filed in *Hoffman v. Internal Revenue Service, et al.*, Adv. No. 81–0029, that addresses the validity of § 522(f)(1).

decision in this case, the Court has been mindful of both the presumption of constitutionality that should quite properly be afforded Congressional action, *Thompson v. United States*, 148 F.Supp. 910, 914 n.8 (E.D.Pa.1957), and the wisdom of the proposition that a "trial court should not annul an Act of Congress, unless it is in conflict with some plain mandate of the Constitution, and the determination of constitutionality should generally be left to the appellate courts." *United States v. Smith*, 62 F.Supp. 594, 596 (W.D.Mich.1945). The volume of the reported litigation of this issue before the Bankruptcy Courts and the District Courts,[3] however, is convincing evidence that the question should be decided on its merits rather than on traditional theories of trial level deference to acts of Congress.

## I.

On March 12, 1981, these cases came on for hearing before the Court.[4] At that time counsel stipulated to facts and presented oral argument based upon pre-filed memoranda of law. The Attorney General of the United States was invited to intervene in accordance with 28 U.S.C. § 2403 (1976) in the case of *Coleman v. American Finance Corp.*, Adv. No. 80–0252. Although the Attorney General elected not to intervene formally, the U. S. Attorney filed the government's brief in the appeal then pending before the Tenth Circuit in *In re Rodrock*, 642 F.2d 1195, 7 B.C.D. 344 (10th Cir. 1981). The facts in each case are set out below. In each case it has not been contested that the Bankruptcy Reform Act of 1978 was signed by the President on November 6, 1978, and that it became effective on October 1, 1979, as provided in § 503(a) of the Act. Throughout this opinion, the time span between November 6, 1978 and October 1, 1979

will for the sake of convenience be referred to as the "gap period." In addition, the time after October 1, 1979 will be referred to as the "post-effective date period." Likewise, reference to the period before November 6, 1978 will be referred to as the "pre-enactment date period."

## THE COLEMAN CASE

On December 22, 1977, the Colemans obtained a loan in the amount of $974.99 from the Beneficial Finance Company. In connection with the loan, the Colemans granted Beneficial a nonpossessory, nonpurchase-money security interest in a portion of their household goods and furnishings. In addition, on October 19, 1978, Mrs. Coleman obtained a loan from the American Finance Corporation in the amount of $2,389.74. To secure the loan, Mrs. Coleman granted American Finance a nonpossessory, nonpurchase-money security interest in her interest in household furniture. Thereafter, the Colemans filed a petition under Chapter 7 of the Code on January 7, 1980. The Debtor's Schedule B–4 filed January 25, 1980, reflects that exemptions have been taken under § 522(d)(3) and § 522(d)(5) sufficient to exempt all household goods and furnishings whatever their value.

This adversary proceeding was commenced by the Debtor's complaint to avoid both security interests under § 522(f)(2). Both Beneficial and American Finance filed answers. The issue of the defense of unconstitutionality, however, was raised only by Beneficial. Moreover, Beneficial was the only defendant to file a memorandum of law and to appear by counsel at the hearing.

## THE DIXON CASE

On December 29, 1978, Priscilla Dixon obtained a $2,906.44 loan from AVCO Fi-

---

**3.** Since the hearing on these cases, the Tenth Circuit held that retroactive application of § 522(f)(2) is unconstitutional. *In re Rodrock*, 642 F.2d 1193, 7 B.C.D. 344 (10th Cir. 1981).

**4.** The *Dixon* case came on for hearing on March 17, 1981 at which time a decision was held *sub curia* because it presented issues simi-

lar to those in the other three cases then pending. There are a number of other cases involving the same issue in which hearings have since been had and which are being held *sub curia* pending the issuance of this Opinion. Appropriate Orders will be entered in those cases in conformity with the views expressed here.

nancial Services of Glen Burnie, Inc. secured by a nonpossessory, nonpurchase-money security interest in household goods and furnishings. After filing a petition under Chapter 7 of the Code on April 21, 1980, Ms. Dixon filed a complaint to avoid AVCO's lien on October 15, 1980. Ms. Dixon's amended Schedule B–4 filed September 2, 1980 reflects an exemption under 11 U.S.C. § 522(d)(5) of all her household goods and furnishings.

The complaint came on for hearing before the Court on March 17, 1981. AVCO was not represented by counsel, and has yet to file an answer. Because this case presented questions related to those previously argued concerning the retroactive application of § 522(f), this case was held *sub curia* pending submission of a memorandum of law by Debtor's counsel concerning the constitutionality of the avoidance of security interests created during the gap period. The memorandum on behalf of the Debtor was filed on March 30, 1981.

### THE HUEBLER CASE

This case differs from the others in that it was originated by a creditor's complaint for relief from the stay imposed by 11 U.S.C. § 362(a). The Debtor's answer set up a counterclaim that the creditor's lien was avoidable under § 522(f)(2). The creditor asserts that such avoidance is unconstitutional. At trial, counsel for the debtors and the creditor entered into a stipulation of fact and submitted the case for decision on the legal memoranda previously filed by them and on the oral argument then presented. The trustee, although a named party defendant, has not filed an answer and did not appear at trial.

The Hueblers obtained a loan from the Beneficial Finance Company on August 17, 1978. As part of the loan agreement they gave Beneficial a nonpossessory, nonpurchase-money security interest in household goods and furnishings. The Hueblers filed a petition for relief under Chapter 7 of the Code on May 19, 1980, and are in default on the installment payments due on the loan. The Debtors' Schedule B–4 reflects that they claim an exemption under § 522(d) in all their household goods and furnishings.

### II.

In view of the number of opinions that have been reported to date on the constitutionality of § 522(f)(2), little purpose would be served by setting out an extensive analysis that merely covers ground already reviewed by other courts.[5] Accordingly, to the extent that the views expressed here are in accord with legal theories already well articulated by other courts, they will be limited to concise statements of this Court's opinion.

■ The threshold issue concerning the application of § 522(f)(2) is whether Congress intended the section to apply retroactively to nonpossessory, nonpurchase-money security interests in existence prior to the October 1, 1979 effective date of the Code. The Bankruptcy Code taken as a whole, and §§ 401 & 402 of the Bankruptcy Reform Act of 1978 make it clear that Congress intended the remedial provisions of § 522(f)(2) to apply retroactively so long as the debtor had filed his petition under the Code rather than the Bankruptcy Act of 1898.[6] *In re Pillow*, 8 B.R. 404, 407

---

**5.** *Compare In re Pillow*, 8 B.R. 404 (Bkrtcy., D. Utah 1981) (Mabey, J.) (retroactive voidance under § 522(f)(2) does not violate Fifth Amendment due process rights) *with In re Rodrock*, 3 B.R. 629 (Bkrtcy., D. Colo. 1980) (Moore, J.) (§ 522(f)(2) voidance of security interests created during the pre-enactment period violates Fifth Amendment due process rights), *aff'd* 642 F.2d 1193, 7 B.C.D. 344 (10th Cir. 1981).

No attempt has been made to exhaustively catalog the various reported opinions discussing the constitutionality of § 522(f). Of the opinions not otherwise referred to in this opin-

ion, the following may be of interest: *In re Williams*, 8 B.R. 562 (Bkrtcy., E.D. Wash. 1981); *In re Fisher*, 6 B.R. 206, 2 C.B.C.2d 1335 (Bkrtcy., N.D. Ohio 1980); *In re Primm*, 6 B.R. 142, 2 C.B.C.2d 1170 (Bkrtcy., D. Kan. 1980); *In re Hawley*, 4 B.R. 147 (Bkrtcy., D. Ore. 1980). *See generally* 3 Collier on Bankruptcy ¶ 522.29[2] (15th ed. 1980).

**6.** Section 522(f) of the Code provides that a debtor may avoid a lien on exempt property "to the extent that such lien impairs an exemption." 11 U.S.C. § 522(f) (Supp. III 1979). This

(Bkrtcy., D. Utah 1981); *In re Sweeney,* 7 B.R. 814, 3 C.B.C.2d 523, 526 (Bkrtcy., E.D. Wis. 1980); *Oldham v. Beneficial Finance Co.,* 7 B.R. 124, 125 (Bkrtcy., D. N.M. 1980); *In re Rodrock,* 3 B.R. 629, 634–35 (Bkrtcy., D. Colo. 1980), *aff'd* 642 F.2d 1193, 7 B.C.D. 344 (10th Cir. 1981). Thus, the critical inquiry concerns whether § 522(f)(2) transgresses the rights embodied in the Fifth Amendment.

▆ The Fifth Amendment due process clause has given rise to a significant safeguard against the abridgement of property rights by the Congress. Since the Supreme Court's decision in *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), it has been clear that legislation adopted under the Congressional bankruptcy powers cannot substantially impair pre-existing substantive rights in specific property. Although the government argues, and several bankruptcy courts have adopted the rationale that *Radford* has been modified *sub silentio* by *Wright v. Vinton Branch of the Mountain Trust Bank,* 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937), and by other more recent decisions, such a contention is without merit and is expressly rejected for the reasons that follow.

In *Radford* the Court struck down the initial version of the Frazier-Lemke Act adopted to aid depression era farmers. Because the Act took five property rights from mortgagees retroactively,[7] the Court

held in an opinion by Mr. Justice Brandeis that the Act violated Fifth Amendment rights. 295 U.S. at 601–02, 55 S.Ct. at 868–69. Congress reacted, and in 1937 the Court was called upon to consider a revised Frazier-Lemke Act as well as reconsider *Radford.* In *Wright,* the Court upheld the amended act in a second opinion by Mr. Justice Brandeis. The significance of *Wright,* and its impact upon *Radford* was well summarized in *Rodrock v. Security Industrial Bank,* 3 B.R. 629 (Bkrtcy, D. Colo. 1980), *aff'd* 642 F.2d 1193, 7 B.C.D. 344 (10th Cir. 1981). In *Rodrock,* Judge Moore observes that,

> in its redraft of Frazier-Lemke, Congress reserved to secured creditors the right to retain liens until full satisfaction of the underlying obligation. In addition, the new version also returned to the creditors the right to satisfaction of the debt from the secured property. These are perhaps the quintessential rights of any secured creditor, and to say, therefore, that [*Wright*] represents an erosion of *Radford* is to disregard the significance of the rights available to secured creditors following the Frazier-Lemke amendment.

*Id.* at 633. Thus, *Wright* and *Radford,* taken together, represent a significant limitation upon Congressional power to retroactively effect the rights of secured creditors. Subsequent decisions by the Supreme Court confirm rather than undermine this basic proposition.[8]

---

section was intended by Congress to protect "the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 362 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6318. On its face, § 522(f) provides for the avoidance of nonpossessory, nonpurchase-money security interests in household goods and furnishings without regard to when the security interest arose.

7. The rights that the *Radford* Court referred to as being taken from mortgagee banks were:

  1. The right to retain the lien until the indebtedness thereby secured is paid.
  2. The right to realize upon the security by a judicial public sale.

3. The right to determine when such sale shall be held, subject only to the discretion of the court.
4. The right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself.
5. The right to control meanwhile the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt.
295 U.S. at 594–95, 55 S.Ct. at 865–66.

8. A significant number of courts have adopted the view that the Supreme Court's evolutionary development of the doctrine of substantive due

In the instant case, § 522(f)(2) goes well beyond the bounds of the limitations imposed by the Fifth Amendment. The effect of the debtor's avoidance powers under § 522(f)(2) is to extinguish all the rights manifest in a creditor's nonpossessory, non-purchase-money security interest that has lawfully attached to household goods. These rights were the product of a contractual relationship between the parties—a secured creditor gives a loan conditioned and predicated upon the receipt of a lien on property to which the creditor can look for satisfaction of the debt.[9] The security interest, whatever its value, was undoubtedly as much the essence of the creditor's bargain as was the debtor's promise to repay the principal with interest. Were a debtor to refuse to provide collateral, it can hardly be doubted that the parties' bargain would have been fundamentally different from that now before the court. Although it is true that a lien may be avoided only to the extent that it impairs an exemption under § 522(b), in the great majority of consumer cases the lien will either be avoided in its entirety or reduced to such a degree so as to have *de minimis* value. Once his lien has been avoided, a creditor is no more than a general unsecured creditor. Such a conversion of a creditor's status is an abridgement of the two rights that *Radford* and *Wright* found inviolable, *viz*: the right to satisfaction of the debt from the secured property and the right to retain the lien until the debt is satisfied. Such an absolute retroactive deprivation of a secured creditor's rights has never been sanctioned by Supreme Court decisions. Accordingly, § 522(f)(2) cannot be constitutionally applied to security interests created prior to the enactment date of the Code on November 6, 1978.

With respect to security interests created during the gap period, however, wholly different considerations are relevant. From the date of enactment, creditors had ample and explicit notice that Congress intended a significant modification of secured creditor's rights once the Reform Act went into effect on October 1, 1979. In light of this notice, any creditor who obtained a nonpossessory, nonpurchase-money security interest during the gap period proceeded at his own risk and cannot now be heard to complain of the consequences. For that reason the overwhelming weight of authority finds that gap period security interests may be subjected to § 522(f)(2) avoidance without violation of the Fifth Amendment. *See, e. g. In re Head*, 4 B.R. 521, 524 (Bkrtcy, E.D. Tenn. 1980); *In re Steinart*, 4 B.R. 354, 358 (Bkrtcy, W.D. La. 1980); *In re Seltzer*, 7 B.R. 80, 82 (Bkrtcy, D. Colo. 1980); *In re Sweeney*, 7 B.R. 814, 3 C.B.C.2d 523, 528 (Bkrtcy, E.D. Wis. 1980).[10] This line of authority appears to be the better reasoned, and is the one adopted here.

process requires no more than that § 522(f) bear some rational relationship to a legitimate legislative objective. *See, e. g., In re Pillow*, 8 B.R. 404, 416–20 (Bkrtcy, D. Utah 1981); *In re Brown*, 7 B.R. 264, 265–66 (Bkrtcy, N.D. Tex. 1980). The Supreme Court continues to cite *Radford*, however, without any qualification with respect to such a limitation. *See, e. g., Armstrong v. United States*, 364 U.S. 40, 44, 80 S.Ct. 1563, 1566, 4 L.Ed.2d 1554 (1960). *Cf. The Regional Rail Reorganization Act Cases*, 419 U.S. 102, 162, 95 S.Ct. 335, 367, 42 L.Ed.2d 320 (1974) (Douglas, J. dissenting). Furthermore, Congress recognized the continuing vitality of *Radford* by citing it in the legislative history of the Reform Act. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 339, 361 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 49, 76 (1978).

9. The Code recognizes the contractual nature of security interests by defining security interest to mean a "lien created *by an agreement.*" 11 U.S.C. § 101(37) (Supp. III 1979) (emphasis added).

10. The only reported case of which the court is aware that holds to the contrary is *Lucero v. Security Industrial Bank*, 4 B.R. 659, 661 (Bkrtcy, D. Colo. 1980), in which Judge Moore applied his earlier decision in *Rodrock* in a case involving a gap period judicial lien. This interpretation of the applicability of *Rodrock* to gap period security interests is expressly rejected. Whether *Lucero* is good law with respect to judicial liens is a determination that is more properly addressed in the case still pending that questions the constitutionality of § 522(f)(1).

## III.

For these reasons it is apparent that § 522(f)(2) cannot constitutionally be applied so as to avoid security interests created prior to the effective date of the Bankruptcy Reform Act of 1978. Gap period security interests, however, are fully subject to avoidance pursuant to § 522(f)(2). Although the question is not squarely presented in these cases, it would follow *a fortiori* from the latter conclusion above that Congress also has the power under the Constitution to adopt a policy permitting the avoidance of nonpossessory, nonpurchase-money security interests arising after the effective date of the Bankruptcy Reform Act of 1978.