In re Doris K. AVERHOFF fka Doris K. Oberheu, Debtor.

Doris K. AVERHOFF, Plaintiff,

v.

PEOPLES FINANCE CO., Defendant.

In re Myron L. OBERHEU, Debtor.

Myron L. OBERHEU, Plaintiff,

v.

PEOPLES FINANCE CO., Defendant.

Bankruptcy Nos. 80–02133, 80–02134.
Adv. Nos. 80–0427, 80–0428.

United States Bankruptcy Court,
N. D. Iowa, E. D.

March 5, 1982.

Melvin H. Wolf, Waterloo, Iowa, for plaintiffs.

R. James Sheerer, Cedar Falls, Iowa, for defendant.

*Findings of Fact, Conclusions of Law, and ORDER, with Memorandum*

WILLIAM W. THINNES, Bankruptcy Judge.

The matters before the Court are Plaintiffs Doris K. Averhoff's and Myron L. Oberheu's 11 U.S.C. § 522(f) lien avoidance complaints against Defendant Peoples Finance Company. The adversary proceedings have been consolidated because each proceeding involves an identical set of facts and issues. Attorney Melvin H. Wolf represented the Plaintiffs and Attorney R. James Sheerer represented the Defendant. The matters went to trial, the parties submitted Briefs and a Stipulation of Facts, and the Court, having been fully advised, now makes the following Findings of Fact, Conclusions of Law, and Orders:

### FINDINGS OF FACT

1. On May 30, 1978, Doris K. Averhoff and Myron L. Oberheu (hereinafter the "Debtors") executed and delivered to Peoples Finance Co. (hereinafter "Peoples") a combined promissory note and security agreement (hereinafter the "first note and agreement") granting to Peoples a security interest in the following described property (hereinafter the "original collateral"):

(a) 1 freezer

(b) 2 black and white television sets

(c) 1 stereo

(d) 1 chest of drawers and vanity

(e) 1 love seat

2. The first note and agreement financed a principal sum of $652.74, with total payments of $930.00 due over a thirty-month period.

3. Peoples properly perfected its nonpossessory, nonpurchase-money security interest in the original collateral by filing a financing statement.

4. On November 6, 1978, the Bankruptcy Reform Act of 1978 was enacted.

5. On February 26, 1979, Debtors executed and delivered to Peoples a second combined promissory note and security agreement (hereinafter the "second note and agreement") granting to Peoples a security interest in the original collateral and a Jeep. The first note and agreement was marked "renewed by Loan No. _____" and was given to Debtors. The second note and agreement incorporated by reference the first note and agreement.

6. The second note and agreement financed a principal sum of $1,381.12, with total payments of $1,944.00 due over a thirty-six month period.

7. On October 1, 1979, the Bankruptcy Reform Act became effective.

8. On October 10, 1979, Debtors executed and delivered to Peoples a third combined promissory note and security agreement (hereinafter the "third note and agreement") granting to Peoples a security interest in the original collateral, additional household goods and furnishings of the Debtors (hereinafter the "additional collateral"), and certain real estate. The second note and agreement was marked "renewed by Loan No. _____" and was given to Debtors. The third note and agreement incorporated by reference the second note and agreement.

9. The third note and agreement financed $3,277.76, with total payments of $5,184.00 due over a forty-eight month period.

10. Peoples properly perfected said security interest in the original collateral and additional collateral by filing a financing statement.

11. Each of the previously described security agreements contained a "future advances" clause.

12. The Debtors, married throughout the previously described transactions with Peoples, were thereafter divorced.

13. The Debtors filed individual Chapter 7 bankruptcy petitions in this Court on June 3, 1980.

14. On October 28, 1980, the Debtors separately filed 11 U.S.C. § 522(f)(2)(A) complaints seeking to avoid Peoples' third security interest in the original collateral and the additional collateral.

15. Peoples, in addition to filing answers generally denying Debtors' separate complaints, asserted that avoidance of its liens would constitute a taking of its property in violation of the Fifth Amendment of the United States Constitution.

16. The second note and agreement constituted a novation of the first note and agreement.

17. The third note and agreement constituted a novation of the second note and agreement.

### CONCLUSIONS OF LAW

1. The retroactive application of 11 U.S.C. § 522(f) to avoid nonpossessory, nonpurchase-money security interests created prior to the Code's enactment constitutes a taking of property in violation of the Fifth Amendment of the United States Constitution.

2. Because a lender securing a nonpossessory, nonpurchase-money security interest (a) in the gap period and (b) after the Code's effective date, was on notice of 11 U.S.C. § 522(f)'s potential impact on his lien rights, the avoidance of either lien does not constitute a taking of property in violation of the Fifth Amendment of the United States Constitution.

3. Each refinancing or "flipping" of a combined promissory note and security agreement constitutes a novation of the prior combined promissory note and security agreement.

4. A novation of a prior agreement terminates the prior agreement.

5. The second combined promissory note and security agreement constituted a novation of the first combined promissory note and security agreement.

6. The third combined promissory note and security agreement constituted a novation of the second combined promissory note and security agreement.

7. The third combined promissory note and security agreement may be avoided under 11 U.S.C. § 522(f)(2)(A) without such avoidance constituting a taking of property in violation of the Fifth Amendment to the United States Constitution.

## ORDER

IT IS THEREFORE ORDERED that the security interest held by People's Finance Co. in the exempt household goods, appliances, and furnishings of the respective Plaintiffs-Debtors shall be, and the same is, avoided pursuant to 11 U.S.C. § 522(f)(2)(A).

## MEMORANDUM

The issue presented to the Court by these adversary proceedings is whether the avoidance of Peoples Finance Company's (hereinafter "Peoples") lien on Debtors' original collateral and additional collateral would constitute a taking of property in violation of the Fifth Amendment of the United States Constitution.

## DIVISION I

These adversary proceedings were commenced by the Debtors pursuant to 11 U.S.C. § 522(f)(2)(A) and seek the avoidance of Peoples' nonpossessory, nonpurchase-money security interest in the Debtors' household goods and furnishings. Peoples challenged the Debtors' ability to avoid its lien on the ground that such avoidance would constitute a taking of its property in violation of the Fifth Amendment.

---

1. The renewal of an existing loan in connection with an extension of new credit is commonly

The parties stipulated to the facts and submitted the constitutional issue to the Court for determination. In brief, Peoples refinanced or "flipped"[1] Debtors' first and second note and agreements, each time extending additional credit and receiving new collateral. The three notes and agreements were each executed within distinct periods. The first was executed before the Code's enactment i.e., prior to November 6, 1978. The second was executed in the gap period between the Code's enactment and the Code's effective date. The third was executed after the Code's effective date, which was October 1, 1979. The constitutionality of an 11 U.S.C. § 522(f) lien avoidance of a security interest created within each of the three time periods will be examined separately.

### A. Lien Avoidance of Pre Code-Enactment Date Security Interest

In *In re Hammer*, 9 B.R. 343 (Bkrtcy.N.D.Ia.1981), the Court held that, although 11 U.S.C. § 522(f) was intended by Congress to apply to security interests created prior to the Code's enactment, the retroactive application of 11 U.S.C. § 522(f) to avoid such nonpossessory, nonpurchase-money security interests violates the Fifth Amendment of the United States Constitution. *In re Hammer, supra*, at 353. If the first combined promissory note and security agreement were the only such note and agreement involved in this matter, therefore, the Debtors could not constitutionally avoid that security interest pursuant to 11 U.S.C. § 522(f).

### B. Lien Avoidance of Gap-Period Security Interest

In *In re Bruntz*, 10 B.R. 444 (Bkrtcy. N.D.Ia.1981), the Court held that the application of 11 U.S.C. § 522(f) to avoid nonpossessory, nonpurchase-money security interests created during the gap period does not violate the Fifth Amendment. *In re Bruntz, supra*, at 446. The Court found that creditors who obtained security inter-

---

referred to as "flipping." *In re Ellis*, 1 B.C.D. 798, 800 (Bkrtcy.S.D.N.Y.1975).

ests during the gap period had notice of the Code provisions and received their lien rights subject thereto. *Id.* at 448.

## C. Lien Avoidance of Post-Code Effective Date Security Interest

Consistent with the *Bruntz* opinion, the Court holds that the application of 11 U.S.C. § 522(f) to avoid nonpossessory, non-purchase-money security interests created after the Code's effective date does not violate the Fifth Amendment. Creditors obtaining security interests after the Code's effective date are on notice of the Code's provisions and consequently receive their lien rights subject thereto. *In re Sweeney,* 7 B.R. 814, 819, 6 B.C.D. 1377, 1380, 3 C.B. C.2d 523, 528, (Bkrtcy.E.D.Wisc.1980); *In re Alston,* 11 B.R. 184, 187, 7 B.C.D. 894, 896 (Bkrtcy.W.D.Tenn.1981).

In the cases at bar, then, the Court must decide whether the security interest appurtenant to the first note and agreement continued in effect throughout the execution of the subsequent combined promissory notes and security agreements.

## DIVISION II

■ The collateral subject to Peoples' October 10, 1979, security interest consisted of two groups: (i) the additional collateral, i.e. that collateral which was not collateral in either of the two prior agreements; and (ii) the original collateral, i.e. that collateral which was collateral in both of the two prior agreements and which is described in Finding of Fact No. 1.

Peoples' nonpossessory, nonpurchase-money security interest in the additional collateral first arose on October 10, 1979, after the Code's effective date. As was noted above, the Court holds that the application of 11 U.S.C. § 522(f)(2) to avoid liens created after the Code's effective date does not violate the Fifth Amendment. Therefore, the lien on the additional collateral may be avoided.

Whether the October 10, 1979 lien may be avoided with respect to the original collat-

eral is a slightly more difficult issue. Peoples contends that its lien on the original collateral cannot be avoided because it arose prior to the Code's enactment. Peoples maintains that its dealings with Debtors constituted a continuing loan transaction in which the nature of the obligation and the underlying security interest remained the same. Under Peoples' analysis, its lien on the original collateral was created upon the execution of the first note and agreement, and was merely renewed, and not altered, by the second and third note and agreements.

The Court is not persuaded by Peoples' argument. Instead, the Court holds that the second and third combined notes and agreements were novations of the prior notes and agreements and that the October 10, 1979 lien on the original collateral may be avoided as a prospective application of 11 U.S.C. § 522(f).

> Under Iowa law,
> It is the general and well-recognized rule that the necessary legal elements to establish a novation are parties capable of contracting, a valid prior obligation to be displaced, the consent of all the parties to the substitution, based on sufficient consideration, the extinction of the old obligation, and the creation of a new one.[2]

*See* § 554.1103, Code of Iowa (1979). Although the last two notes executed by the Debtors were labelled "renewal notes," different terms concerning the loan attended each note. Each subsequent note and agreement advanced new money to the Debtors, increased the Debtors' payments, provided for additional collateral to secure Peoples' security interest, and introduced a new security agreement. The second note and agreement was a novation displacing the first note and agreement. Similarly, the third note and agreement was a novation displacing the second note and agreement. *See In re Alston,* 11 B.R. 184, 7 B.C.D. 894, (Bkrtcy.W.D.Tenn., 1981); *In re Carnes,* 8 B.R. 599 (Bkrtcy.W.D.Okla., 1981); *In the Matter of Johnny Lee Ward,*

---

**2.** *Wade & Wade v. Central Broadcasting Co.,*  227 Iowa 422, 288 N.W. 439 (1939).

*Jr. and Sophia Delores Ward*, 14 B.R. 549 (D.Ct.S.C.Ga.1981) (see discussion in *Ward* concerning debtor Smallwood).

Peoples has bargained away its right to prevent the avoidance of its lien interest in Debtors' original collateral. Peoples was on notice at the time of the execution of the second note and agreement that its lien rights could be affected by Debtors' 11 U.S.C. § 522(f) lien avoidance powers. Similarly, Peoples was on notice at the time of the execution of the third note and agreement that its lien rights could be affected by Debtors' 11 U.S.C. § 522(f) lien avoidance powers. Accordingly, Peoples obtained such lien rights subject to 11 U.S.C. § 522(f), and the application of that statutory section to avoid Peoples' lien in Debtors' original collateral does not violate the Fifth Amendment.

If Peoples had desired to keep the original promissory note in effect, it could have advanced additional sums to the Debtors under its future advances clause. But Peoples did not rely on the future advances clause, apparently because it felt the need to secure the two subsequent advances with more collateral. The two prior security interests were entirely superceded by the October 10, 1979, security interest. Such was the intent of the parties. *In the Matter of Johnny Lee Ward, supra.*[3]

The Court, therefore, concludes that Peoples' nonpossessory, nonpurchase-money security interest in Debtors' original collateral

and additional collateral may be avoided by the Debtors pursuant to § 522(f)(2)(A).

---

**3.** Even if the second and third note and agreements were not novations of the prior note and agreements, the Court finds that Peoples expressly waived its security interest in at least some of the original collateral.

The third note and agreement contained the following language concerning the personal property in which Peoples had a security interest:

> *Paragraph D.* The items listed on the appraisal sheets dated 10–10–79 are the security on this loan. Some of the listed items may be exempted according to statute: (see paragraph C); *no security interest attahces [sic] to said exempt items.* (emphasis added)

The language gives rise to an express waiver of Peoples' security interest in those items which are exempt according to the statute set out in "paragraph C":

*Paragraph C.* HOUSEHOLD GOODS, ETC. All of debtor's household goods, appliances, equipment, furniture and personal property of every kind, nature and description now located in or about debtors' premises at their residence set forth above, *but not* the clothing, one dining room table and set of chairs, one refrigerator, one heating stove, one cooking stove, one radio, beds and bedding, one couch, two living room chairs, cooking utensils, or kitchenware used by the debtor, debtor's dependents, or the family with which the debtor resides, except to the extent that this is a purchase money security agreement with respect to such property. (emphasis added) Therefore Peoples does not have a security interest in the items of personal property excepted in Paragraph C of the October 10, 1979 security agreement.