**In re Robbie L. SLATER, Debtor.**

**Robbie L. SLATER, Plaintiff,**

v.

**HOUSEHOLD FINANCE CORP., Defendant.**

Bankruptcy No. 81–2–0090–L.

Adv. No. 81–0914.

United States Bankruptcy Court, D. Maryland.

May 10, 1982.

Jack I. Hyatt, Baltimore, Md., for plaintiff-debtor Robbie L. Slater.

William L. Putzel, Putzel & Putzel, Baltimore, Md., for defendant Household Finance Corp.

---

MEMORANDUM OPINION AND ORDER

JAMES F. SCHNEIDER, Bankruptcy Judge.

 This complaint to avoid a nonpossessory, nonpurchase-money security agreement pursuant to 11 U.S.C. § 522(f)(2)(A) (Supp. IV 1980) requires the Court to consider legal issues not before the Court in *In re Coleman*, 10 B.R. 772 (Bkrtcy.D.Md.1981) (Lebowitz, B. J.). Counsel agree that the facts are undisputed, and have requested the Court to rule on memoranda and the oral argument heard in open Court on April 13, 1982. The question presented is whether § 522 may be applied to a security interest related to a loan first made prior to the enactment of The Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2683 (1978) (codified in part at 11 U.S.C. §§ 101–1330 (Supp. IV 1980) ("the Code")), but thereafter "refinanced" during the so-called "gap period"—that period between the enactment and effective dates of The Reform Act. For the reasons set out below the Court concludes that such a security interest is properly avoidable under § 522(f)(2) of the Code.

The undisputed facts may be briefly stated. The Debtor, Robbie L. Slater, filed a voluntary petition seeking relief under Chapter 7 of the Code on August 20, 1981. In December of 1977 Slater had obtained a loan from Household Finance Corporation ("HFC") which was secured by a security interest duly perfected by the appropriate filing of a financing statement. The loan was "refinanced" in September of 1979 at which time Slater received an additional $346.99 in cash (the balance having been credited to the prior account and to certain insurance premiums). In both instances Slater made a security agreement covering all his household and consumer goods.

 In light of *Coleman*, it is settled law in this District that a security interest created during the gap period may be avoided under § 522(f)(2) without violation of the Fifth Amendment of the United States Constitution,[1] even though the contrary conclusion follows with respect to one created prior to the November 6, 1978 enactment date. 10 B.R. at 777. A well reasoned line of authority holds that a refinanced loan is in legal substance a novation that fixes new rights as a matter of bankruptcy law as between the parties. *In re Averhoff*, 18 B.R. 198 (Bkrtcy.N.D.Iowa 1982); *In re Ward*, 14 B.R. 549 (D.C.S.D.Ga. 1981); *In re Alston*, 11 B.R. 184 (Bkrtcy.W.D.Tenn.1981); *In re Clark*, 9 B.R. 407 (Bkrtcy.E.D.Va.1981). *Contra In re Chambell*, 17 B.R. 597 (Bkrtcy.W.D.Mo.1982). The Court adopts this view. As District Judge Bowen observed in *Ward*, under such circumstances the "clear intent of the parties, upon entering into the subsequent loan contracts, was that the contemporaneously executed security agreements entirely superceded the initial security agreement. Thus, the operative security interest, for purposes of Section 522(f), vested [at the time of the novation]." 14 B.R. at 554. This is particularly the case when as in this instance the refinanced loan not only paid off a pre-existing note but also advanced additional cash to the Debtor. *See generally, I. W. Berman Properties v. Porter Bros., Inc.*, 276 Md. 1, 7–9, 344 A.2d 65, 70–71 (1975). Thus, the security interest created by a refinancing during the gap is avoidable under § 522(f)(2) because "creditors had ample and explicit notice that Congress intended a significant modification of secured creditors' rights once the Reform Act went into effect ... [and] any creditor who obtained a nonpossessory, nonpurchase-money security interest during the gap period proceeded at his own risk." *Coleman*, 10 B.R. at 777.

The gravaman of HFC's position is that application of § 522(f)(2) is unconstitutional because its security interest has been continuously perfected since 1977—well before the enactment of the Code. The Court disagrees with HFC's contention that a contrary result is dictated by *Household Finance Corp. v. Bank Commissioner*, 248 Md. 233, 235 A.2d 732 (1966). That case stands for no more than the proposition that

---

1. A current recapitulation of the reported opinions that have adopted this view is set out at *In re Eagan*, 16 B.R. 439, 442 n.6 (Bkrtcy., N.D.N.Y.1982).

"[r]equiring the release of a financing statement upon the refinancing of a loan would serve no useful purpose and, what is more to the point, would disrupt the priorities designed to protect the filing system." *Id.* at 240, 235 A.2d at 735. The filing of a financing statement is no more than one method by which to perfect a security interest for purposes of establishing its priority as against other creditors claiming an interest in the same collateral. Md.Com.Law Code Ann. § 9–312 (1975 & Supp.1981). The financing statement is not the basis for a Debtor's liability to the creditor; that liability is created by the security agreement. *L & V Co. v. Asch,* 267 Md. 251, 255–56, 297 A.2d 285, 287–88 (1972). Whether the underlying security agreement is enforceable between the parties as a matter of either state or bankruptcy law is a question wholly unrelated to perfection. *Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland,* 455 F.2d 141, 146 (4th Cir. 1970). Accordingly, HFC's contention is without merit.

For the above reasons, it is this 10th day of May, 1982 by the United States Bankruptcy Court for the District of Maryland

ORDERED that the nonpossessory, non-purchase-money security interest of the Defendant HOUSEHOLD FINANCE CORPORATION in the Debtor's household goods and furnishings should be, and the same is hereby AVOIDED AND CANCELLED; and it is

FURTHER ORDERED that a copy of this Memorandum Opinion shall be mailed forthwith by the Clerk of the Court by regular mail to all counsel of record.