In re Noel Duane DAVIS and
Jane Davis, Debtors.

Bankruptcy No. 592–50393.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Dec. 24, 1992.

Robert B. Wilson, Sims, Kidd, Hubbert & Wilson, Lubbock, TX, for debtors.

Mr. E. Scott Frost, Asst. U.S. Atty., U.S. Dept. of Justice, Lubbock, TX, for FmHA.

### MEMORANDUM OF OPINION ON LIEN AVOIDANCE

JOHN C. AKARD, Bankruptcy Judge.

The question presented in this case is whether a nonpossessory, nonpurchase-money security interest in farm equipment may be avoided by the Debtors under § 522(f)(2)(B) of the Bankruptcy Code[1] where the security interest was originally created and properly perfected prior to the Code's enactment date but where the debt was rescheduled after the effective date of the Code.[2] Under the particular facts of this case, the Court determines that the lien cannot be avoided.

### FACTS

The facts of this case are substantially undisputed. On June 4, 1992, Noel Duane Davis and Jane Davis (the Debtors) filed for relief under Chapter 7 of the Bankruptcy Code. The Debtors are farmers. They claimed the following five items as exempt tools of the trade:

1965 John Deere 4020 Tractor
1966 John Deere 4020 Tractor

---

1. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

2. This court has jurisdiction over this matter under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern Dis-

trict of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) and (O).

1972 John Deere 282 Cotton Stripper
1979 John Deere 283 Cotton Stripper
1979 Bush Hog Module Builder (½ interest)

The total personal property claimed as exempt by the Debtors does not exceed the $60,000 personal property exemption allowed by the Texas Property Code. Tex. Prop.Code Ann. § 42.001(a)(1) (Vernon Supp.1992).

When they filed their petition, the Debtors owed the Farmers Home Administration (FmHA) $164,159.65. The debt is represented by six promissory notes executed over the past 15 years, as indicated in the following table:

| | | | | | |
|---|---|---|---|---|---|
| 03/16/78 | 32,800.00 | | | | |
| 04/12/79 | | 12,000.00 | | | |
| 02/27/80 | | | 18,200.00 | | |
| 04/07/82 | | | | 30,000.00 | 43,000.00 |
| 04/19/85 | | | | | 37,900.00 |

Each of these loans was rescheduled on the following dates and in the following amounts:

| | | | | | |
|---|---|---|---|---|---|
| 05/15/86 | 29,796.91 | 18,950.22 | 23,751.97 | 16,851.86 | 44,431.28 | 23,759.96 |
| 06/26/87 | 31,665.85 | 20,138.82 | 25,076.22 | 19,200.74 | 47,218.12 | 25,250.25 |

On March 2, 1978, the Debtors executed a security agreement granting the FmHA a nonpossessory, nonpurchase-money security interest in the equipment listed in the agreement and thereafter acquired including:

1965 John Deere 4020 Tractor
1967 John Deere 4020 Tractor
1972 John Deere 282 Cotton Stripper

The Debtors signed additional security agreements on February 27, 1980, October 19, 1982, April 19, 1985, and March 29, 1990. These security agreements granted the FmHA a security agreement in the following items, among others:

1979 John Deere 283 Cotton Stripper
1979 Bush Hog Module Builder (½ interest)

The Debtors filed a motion to avoid the FmHA's security interest in the five items of farm equipment.[3]

## POSITIONS OF THE PARTIES

The Debtors argued that, while the FmHA's security interest may have been created prior to the enactment of the Bankruptcy Code, the rescheduling of the debt occurred long after the effective date of the Bankruptcy Code. Therefore, the lender acted with notice of the avoidance provisions of the Code, and should be subject thereto. Alternatively, the Debtors argued that the FmHA's claims should be barred by the doctrine of laches due to its unreasonable delay in asserting its rights.

The FmHA argued that the security interest in three of the items was created before the enactment of the Bankruptcy Code. Thus, it may not be avoided, since Congress did not intend the Code to be applicable to liens created prior to the Code's enactment, and because such an application would be unconstitutional. The FmHA contended that under Texas law the Debtor may not claim encumbered property as exempt. Finally, the FmHA argued that the lien avoidance provisions of § 522(f)(2)(B) do not include large, expensive items of farm machinery such as the items at issue.

## STATUTES

11 U.S.C. § 522(f) states in pertinent part:

---

**3.** Both parties' pleadings referred to liens on 1965 and 1966 4020 tractors, while the 1978 security agreement lists liens on 1965 and 1967 4020 tractors. The court assumes the parties are referring to the two tractors listed in the 1978 security agreement.

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

. . . .

(2) a nonpossessory, nonpurchase-money security interest in any—

. . . .

(B) implements, professional books, or tools, of the trade of the debtor. . . .

TEX.PROP.CODE ANN. § 42.002(a) (Vernon Supp.1992) states in pertinent part:

(a) "The following personal property is exempt under Section 42.001(a):

. . . .

(3) farming or ranching vehicles and implements;

(4) tools, equipment, books, and apparatus, including boats and motor vehicles used in a trade or profession. . . ."

## DISCUSSION

### Constitutionality

On November 6, 1978, acting under the authority of the United States Constitution, art. I, § 8, cl. 4, Congress passed the Bankruptcy Reform Act of 1978 (now the Bankruptcy Code). As adopted, the Code affected cases filed on or after October 1, 1979. The bankruptcy power conferred on Congress by the Constitution has been regularly construed to authorize the retrospective impairment of contractual obligations. *Hanover Nat'l Bank v. Moyses,* 186 U.S. 181, 188, 22 S.Ct. 857, 860, 46 L.Ed. 1113 (1902). Additionally, the United States Supreme Court found that Congress rationally exercised this authority in the lien avoidance provisions of § 522(f)(2). *United States v. Sec. Indus. Bank,* 459 U.S. 70, 74, 103 S.Ct. 407, 410, 74 L.Ed.2d 235 (1982). As set out above, § 522(f)(2) permits individual debtors in bankruptcy proceedings to avoid liens on certain property.

### Tools of the Trade

■ In *Owen v. Owen,* — U.S. —, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), the United States Supreme Court announced the following rule to determine whether a lien may be avoided under § 522(f): "[A]sk not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether. it impairs an exemption to which he *would have been* entitled but for the lien itself." — U.S. at —, 111 S.Ct. at 1836–37. Before determining the application of § 522(f), the court must first determine whether the Debtors would be entitled to an exemption for the farm equipment at issue.

Since the Debtors elected the Texas exemptions, the question becomes whether this farm equipment is exempt under § 42.-002(a)(4) of the Texas Property Code. TEX. PROP.CODE ANN. § 42.002(a)(4). Under § 42.002(a)(4), items may be claimed as exempt if they are "tools . . . used in the trade or profession" of the debtor. In its *In re Nash* decision, 142 B.R. 148 (Bankr. N.D.Tex.1992), this court acknowledged that the test for determining whether an item qualifies as a tool of the trade of farming is whether the item is not only "fairly belonging to or usable in the trade" of farming but is also "peculiarly adapted to" farming. 142 B.R. at 152 (*citing Meritz v. Palmer (In re Meritz),* 266 F.2d 265, 268 (5th Cir.1959); *Hrncirik v. Farmer's Nat'l Bank (In re Hrncirik),* 138 Bankr. 835, 840 (Bankr.N.D.Tex.1992)). In *Nash,* this court found that tractors and cotton strippers—items such as those involved in this case—were in fact "tools of the trade" in the farming business. 142 B.R. at 152–153 (*citing Cen. Nat'l Bank & Trust Co. v. Liming (In re Liming),* 797 F.2d 895, 901 (10th Cir.1986)). Therefore, the court holds that the Debtor's farm equipment qualifies for exemption as tools of the trade under Texas law. The FmHA's objections to the Debtor's claim of exemptions are denied.

In *Nash* and the authorities cited therein, the phrase "implements, professional books, or tools, of the trade of the debtor" contained in § 522(f)(2)(B) "takes on the character of the statute providing the exemptions, be it federal or state." 142 B.R. at 153. Since the items qualified for exemption under Texas law, the items are

within the purview of § 522(f)(2)(B). Additionally, this court determined in *Nash* that *Owen* should be applied retroactively. 142 B.R. at 151. Therefore if, under the facts of this case, it is determined that the liens in question were created at a time in which § 522(f) was intended by Congress to apply, then those liens may be avoided.

### Lien Avoidance

■ Since the security interest in the last two items was created after the effective date of the Code, they are clearly subject to the avoidance provisions of § 522(f)(2)(B) and are, therefore, avoided. The remainder of the discussion deals with the security interest in the first three pieces of equipment, which interest was created prior to the enactment of the Code.

In *United States v. Sec. Indus. Bank, supra,* the United States Supreme Court held that Congress did not intend the lien avoidance provisions of § 522(f) to be applied retrospectively to avoid liens acquired before the November 6, 1978 enactment date of the Code. 459 U.S. at 81–82. Therefore, if the March 16, 1978 transaction stood alone, the avoidance provisions of § 522(f)(2) would not apply to FmHA's security interest.

However, the Debtors contend that when the FmHA rescheduled the March 16, 1978 note on May 15, 1986 and June 26, 1987, long after the effective date of § 522(f)(2), it acted with notice thereof. Accordingly, it is subject to the provisions of the statute.

In support of their argument, the Debtors cite *Cashion Community Bank v. Carnes (In re Carnes),* 8 B.R. 599 (Bankr. W.D.Okla.1981). *Carnes* involved a duly perfected nonpossessory, nonpurchase-money security interest initially created before passage of the Code. After the enactment of the Code, the debt was renewed and a new security agreement executed. Then, after the effective date of the Code, the debt was again renewed and the debtors signed yet another security agreement. The court held that "where ... there [is] a new note and security agreement executed subsequent to the Code's effective date, all parties [are] chargeable with notice of the

applicable avoiding authority of § 522(f) and fairly are subject thereto." *Id.* at 601.

While *Carnes* held that the renewal automatically exposed a security interest to the avoidance provisions of § 522(f), the great weight of authority reaches the same result only when there is a post-Code novation of the pre-enactment debt. *Averhoff v. Peoples Fin. Co. (In re Averhoff),* 18 B.R. 198 (Bankr.N.D.Iowa 1982) involved a nonpossessory, nonpurchase-money security interest created prior to the enactment of the Code. On two occasions, the second after the effective date of the Code, the debt was renewed with an extension of additional credit and the execution of a new security agreement. *Id.* at 200. Each note contained a future advance clause. The court found each renewal to be a novation because different terms attended each note, additional credit was advanced with each note and new security agreements were executed naming additional collateral. *Id.* at 202. The court held that since the last novation was after the effective date of the Code, the security interest was subject to its avoiding authority. *Id.* The court reasoned that the creditor "bargained away its right to prevent the avoidance of its lien interest in the debtor's original collateral." *Id.* at 203. The court suggested that to avoid this result, the creditor "could have advanced additional sums to the Debtors under its future advances clause." *Id.*

*Slater v. Household Fin. Corp. (In re Slater),* 19 B.R. 954 (Bankr.D.Md.1982) involved a nonpossessory, nonpurchase-money security interest created prior to the Code's enactment. The note was refinanced during the "gap period" (after the passage of the Code on November 6, 1978, but before its effective date, October 1, 1979) with the extension of additional credit and the execution of an additional security agreement. *Id.* at 955. The court chose to follow a "well reasoned line of authority hold[ing] that a refinanced loan is in legal substance a novation that fixes new rights as a matter of bankruptcy law as between the parties." *Id.* Thus, true to its prior decision, *In re Coleman,* 10 B.R. 772 (Bankr.D.Md.1981) (which held that a "gap

period" security interest could be avoided) the court held that the pre-enactment lien was avoidable due to refinancing during the "gap period." 19 B.R. at 955.

*Hitts v. Gen. Fin. Corp. (In re Hitts),* 21 B.R. 158 (Bankr.W.D.Mich.1982) involved a nonpossessory, nonpurchase-money security interest created well before the enactment of the Code. *Id.* at 159. The underlying debt was refinanced numerous times, the last occurring after the effective date of the Code. With each refinancing, the prior loan was paid off, additional credit was extended, and a new security agreement was executed. *Id.* The court found that the refinancing after the effective date of the Code was a novation and therefore avoidable. *Id.* The court found that the parties intended to "create a new debt and a new security interest superseding earlier agreements...." as evidenced by "the facts that a new security agreement was entered into each time, the old loans were paid off and additional money given, and the prior obligations were not mentioned in the new agreements." *Id.* at 159–60. Later in the decision, however, the court announced that "[e]ven if these transactions were a renewal of the initial loan and security agreement, the interest would be avoidable under Section 522(f)." *Id.* at 160. The court further stated that because "the last agreement was executed after the effective date of the Code, the [creditor] is charged with notice of the avoiding authority of Section 522(f), and the agreement is subject to that power." *Id.*

### This Case

Critically important in this case are the facts that on the occasion of each rescheduling, no new security agreements were executed nor were any additional funds advanced. The Rescheduled Promissory Note of May 15, 1986 specifically stated that it rescheduled the unpaid balance of the March 16, 1978 note. No other notes were mentioned. The Promissory Note of June 26, 1987 indicated that it rescheduled

the unpaid balance on the March 16, 1978 note and the May 15, 1986 note. No other notes were mentioned. This court cannot find that merely rescheduling a single debt after the enactment of the Bankruptcy Code is sufficient to allow the Debtors to avoid the pre-Code lien. *See, United States v. Sec. Indus. Bank, supra.*

### Laches

The Debtors further contend that regardless of the pre-enactment status of the security interest, the doctrine of laches should bar the FmHA from asserting its rights. The doctrine of "[l]aches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1960). The Debtors failed to show how they were prejudiced by any delay by the FmHA in asserting its rights under the debt instruments or security agreement at issue. Indeed, the Debtors benefitted by the substantial forbearance shown by the FmHA in exercising its rights. The Debtors were allowed additional time and crop years to make financial ends meet. If anything, the FmHA suffered by virtue of accrual of additional interest which is probably uncollectible. Therefore, the Court holds that no rights of the FmHA are barred by laches.

### CONCLUSION

The Debtors motion to avoid liens is granted as to the 1979 cotton stripper and the 1979 module builder, but is denied as to the 1965 and 1966 tractors and the 1972 cotton stripper.

ORDER ACCORDINGLY.[4]

---

4. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable

to Contested Matters by Bankruptcy Rule 9014. This Memorandum will be published.